## COMMONWEALTH of Pennsylvania

### v.

### David STOKES, Appellant.

Superior Court of Pennsylvania.

Submitted April 15, 2013.

Filed Oct. 8, 2013.

---

**2.** Due to our resolution of Appellant's second issue, we need not address her remaining two issues on appeal.

Elayne Bryn, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: FORD ELLIOTT, P.J.E., BENDER and WECHT, JJ.

OPINION BY FORD ELLIOTT, P.J.E.:

Following a jury trial, on October 19, 2011, appellant was found guilty of murder in the first degree, violating the Uniform Firearms Act ("VUFA"), and aggravated assault. Appellant was found not guilty of possessing an instrument of a crime ("PIC"). The charges related to the December 26, 2009 shooting death of Gjon Goods. Immediately following trial, appellant received a mandatory sentence of life imprisonment without the possibility of parole for first-degree murder, followed by a consecutive sentence of 10 to 20 years for aggravated assault. Appellant's sentence of 3½ to 7 years' incarceration for VUFA was run concurrently with his sentence for aggravated assault. Timely post-sentence motions were filed October 26, 2011, and denied on November 18, 2011. This timely appeal followed. Appellant complied with Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A., and the trial court has filed an opinion.

Appellant has raised the following issues for this court's review:

I. Whether the evidence was insufficient to find the defendant guilty of first degree murder, aggravated assault, and violations of the firearms act because the Commonwealth did not meet its burden to prove that the defendant had the intent to kill or that he killed with malice and the jury did not find that the defendant possessed an instrument of crime[?]

II. Whether the verdict of guilty of first degree murder, aggravated assault, and violations of the firearms act was against the weight of the evidence because the Commonwealth did not meet its burden to prove that the defendant had the intent to kill or that he killed with malice and the jury did not find that the defendant possessed an instrument of crime[?] The three eyewitnesses that did identify the defendant as the person who shot and killed Gjon Goods gave descriptions of the assailant that so greatly conflicted with each other and rose to the level of being irreconcilable. Further, each of their accounts of the shooting was significantly in conflict. The Commonwealth did not present other evidence to connect the defendant to the fatal shooting. A verdict based on this scant evidence must shock one's sense of justice.

III. Whether the trial court erred by failing to suppress the physical evidence of the search warrant from 342 Winton Street[?] This evidence included (1) four loose .32 caliber bullets; (2) empty ammo box of .9 mm[ ] caliber bullets[;] (3) two targets[;] and (4) photographs. The admission of this evidence should have been precluded because it was irrelevant to this crime and any alleged evidence was outweighed by the danger of unfair prejudice pursuant to Pa. R.Evid. 403 and 404(b). The admission of this evidence suggested to the jury "other crimes." [Com-

monwealth v. Marshall,] 743 A.2d 489 (Pa.Super.1999)[, *appeal denied,* 563 Pa. 613, 757 A.2d 930 (2000).] The decedent, Gjon Goods, was shot by a .44 caliber firearm.

IV. Whether the trial court erred by permitting the Commonwealth to introduce ballistic evidence that included target[s], bullets and an empty ammunition box that were not related to the fatal shooting and painted a violent picture of the defendant that completely tainted the jury from its duty to be fair and impartial[?]

Appellant's brief at 4.

Before proceeding to address appellant's issues on appeal, we recite the underlying facts of this case, as aptly summarized by the trial court:

On December 26, 2009, [at] approximately 10:00 PM, the decedent, Gjon Goods, escorted his girlfriend, Shannon Miller to a party at the Fireside Tavern at 6th Street and Oregon Avenue, Philadelphia, PA. N.T. 10/12/2011 @ 100–103.[Footnote 2] Decedent did not stay and left the group shortly after arriving. Id. When Decedent returned to the tavern to pick up Shannon he saw Shannon was grabbed whereupon he commented to Appellant that he should not touch a female like that. Decedent was then attacked and a fight ensued between the two males and joined by Appellant's friend, Christopher Fickling. N.T. 10/13/2011 @ 6–8, 52–56. Shaina, Shannon's sister, testified that she, Shannon, and other patrons, attempted to stop the fight and that she and Decedent were pushed out the back door of the tavern in the process. Id. @ 56. Once outside, Sha[in]a attempted to calm Decedent, however, Appellant appeared at which point Appellant stated "what now, pussy" and Appellant then retrieved a weapon and fired at them. Id. @ 58–59. Sean [Miller], who observed the incident from his car parked at the corner, testified that after the first shot, Decedent pulled Shaina to [the] ground and tried to cover her. Appellant then approached closer and fired two more shots while Decedent and Shaina were on the ground. Id. @ 115. Decedent got up and fled and Appellant followed, firing his weapon at the decedent as he ran. Id. As Appellant passed by Shaina she yelled that Appellant shot her, to which Appellant responded: "I didn't shoot you, bitch". Appellant replaced the firearm in his waistband and walked away. Id. @ 116. Shaina was later transported to the hospital and treated for a gunshot wound to the hand.

Meanwhile, Shannon searched unsuccessfully for the decedent. Philadelphia Police Officer John Burke testified that while he was en route to the tavern he found the decedent lying on nearby Marshall Street suffering from a gunshot wound to the chest. Id. @ 148. Burke immediately transported Decedent to Jefferson Hospital where he was later pronounced dead.

Detective John Keen was the lead investigator in the case and he interviewed and obtained a statement from Shaina Miller. Shaina ha[d] been previously interviewed when she was initially brought to the hospital by Detective James Burns and she positively identified Appellant as the shooter from a photo array. After Miller[']s interview with Keen and after obtaining her supplemental statement, Miller was again shown a photo array and she again positively identified Appellant as the shooter. She also positively identified a photograph of Christopher Fickling from a

photo array. Id. @ 143–144, N.T. 10/13/201[1] @ 74–75.

Detective Levy Morton interviewed Sean Miller and took his statement. Id. @ 103–104. Miller was shown a photo array and he likewise identified Appellant as the shooter. Id. @ 113. Shaina and Sean described the gun Appellant used as a large silver revolver. Id. @ 159.

After conferring with the other officers and detectives involved in the case, and obtaining Shaina's statement, Detective Keen prepared an arrest warrant for Appellant and a search warrant for his last known address. Id. @ 10/17/2011 @ 45, 145. Keen, accompanied by Detective Burns, Officer Brian McMenamin of the SWAT unit, along with other members of the SWAT team, located Appellant at 342 Winton Street, Philadelphia, PA, the home of his aunt, where Appellant was arrested in his second floor bedroom. Incident to the arrest, the officers and detectives executed the search warrant and recovered from the second floor bedroom where Appellant was located four live rounds, .32 caliber, an appointment card in Appellant[']s name, photographs, and a poster size target similar to those at the firing range for practice containing bullet holes together with an empty box of [.9 mm] ammunition. Id. @ 147–149. No actual weapons were recovered from Appellant's bedroom and no weapon was found at or near the crime scene. Id. @ 10/17/2011 @ 17, 54–55.

---

[Footnote 2] N.T. refers to the Notes of Testimony taken at the trial before the Honorable Gwendolyn N. Bright on October 12–19, 2011. The specific date to which reference is made follows the designation N.T.

Trial court opinion, 7/20/12 at 2–4.

In his first issue on appeal, appellant argues that the evidence was insufficient to support the jury's verdict. Appellant contends that the Commonwealth failed to prove that he was the shooter or that he had the requisite specific intent to kill. (Appellant's brief at 22–23.) We disagree.

> In reviewing the sufficiency of the evidence, we view all the evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, to see whether there is sufficient evidence to enable [the factfinder] to find every element of the crime beyond a reasonable doubt. This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on "more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty."

*Commonwealth v. Coon,* 695 A.2d 794, 797 (Pa.Super.1997) (citations omitted). Moreover, when reviewing the sufficiency of the evidence, this Court may not substitute its judgment for that of the fact-finder; if the record contains support for the convictions they may not be disturbed. *Commonwealth v. Marks,* 704 A.2d 1095, 1098 (Pa.Super.1997) (citing *Commonwealth v. Mudrick,* 510 Pa. 305, 308, 507 A.2d 1212, 1213 (1986)). *Commonwealth v. McFadden,* 850 A.2d 1290, 1295–1293 (Pa.Super.2004).

▬▬ Appellant was convicted of murder in the first degree.[1]

---

1. Although appellant also cites the relevant statutes for aggravated assault and VUFA, he confines his argument on appeal to his conviction of first-degree murder; therefore, we do the same.

To obtain a conviction for first-degree murder, the Commonwealth must demonstrate that a human being was unlawfully killed; that the defendant did the killing; and that the killing was done in an intentional, deliberate, and premeditated manner, which this Court has construed to mean that the defendant acted with a specific intent to kill. *See* 18 Pa.C.S. §§ 2501, 2502(a); *Commonwealth v. Watkins*, 577 Pa. 194, 208–09, 843 A.2d 1203, 1211 (2003) (citing *Commonwealth v. Williams*, 537 Pa. 1, 13, 640 A.2d 1251, 1256–57 (1994); *Commonwealth v. Keaton*, 556 Pa. 442, 455, 729 A.2d 529, 536 (1999)).

*Commonwealth v. Cousar*, 593 Pa. 204, 217, 928 A.2d 1025, 1032 (2007). "Specific intent to kill can be proven where the defendant knowingly applies deadly force to the person of another." *Commonwealth v. Hawkins*, 549 Pa. 352, 368–369, 701 A.2d 492, 500 (1997) (citation omitted), *cert. denied*, 523 U.S. 1083, 118 S.Ct. 1535, 140 L.Ed.2d 685 (1998).

 Instantly, several eyewitnesses, including Shaina Miller, who sustained a gunshot wound to the hand, identified appellant as the gunman. There was testimony that after the fight in the bar, appellant approached the victims, stated, "what now, pussy," and then fired. Appellant continued to fire two more shots as the decedent and Shaina Miller lay on the ground. Both Shaina Miller and Sean Miller identified appellant as the shooter in a photo array, and again at trial. Shaina Miller was familiar with appellant prior to the night of the shooting. (Notes of testimony, 10/13/12 at 53.) Michelle Canzoneri ("Canzoneri") also witnessed the bar fight as well as the shooting outside the bar, and identified appellant in a photo array and at trial. (*Id.* at 122–125, 133–134.) Furthermore, the decedent, Gjon Goods, sustained a fatal gunshot wound to the chest, a vital part of the body. *See Commonwealth v. Simpson*, 562 Pa. 255, 265, 754 A.2d 1264, 1269 (2000), *cert. denied*, 533 U.S. 932, 121 S.Ct. 2556, 150 L.Ed.2d 722 (2001) ("This Court has held repeatedly that the use of a deadly weapon on a vital part of a human body is sufficient to establish the specific intent to kill."). Appellant's sufficiency claim fails.[2]

 Next, appellant contends that the jury's verdict was against the weight of the evidence.

An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence[,] do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 560 Pa. 308, 319–20, 744 A.2d 745, 751–52 (2000) (ci-

---

2. Appellant argues that the jury found him not guilty of PIC. However, it is well settled that an inconsistent verdict is not grounds for reversal or for a new trial. *Commonwealth v. Carter*, 444 Pa. 405, 282 A.2d 375 (1971). "It has long been the rule in Pennsylvania and in the federal courts that consistency in a verdict in a criminal case is not necessary." *Id.* at 408, 282 A.2d at 376 (citations omitted).

tations, quotation marks, and footnote omitted). In other words, a court may grant a new trial because the verdict is against the weight of the evidence only when the verdict rendered is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Goodwine,* 692 A.2d 233, 236 (Pa.Super.1997). The determination of whether to grant a new trial rests within the discretion of the trial court, and we will not disturb this determination absent an abuse of discretion. *Commonwealth v. Young,* 692 A.2d 1112, 1114 (Pa.Super.1997).

*Commonwealth v. Bruce,* 207 Pa.Super. 4, 916 A.2d 657, 665 (2007), *appeal denied,* 593 Pa. 754, 932 A.2d 74 (2007).

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Widmer, supra* at 321–322, 744 A.2d at 753 (citations omitted).

Here, appellant relies on minor inconsistencies in the accounts of the witness, e.g., Sean Miller described the shooter as being 6′2″ or 6′3″ and Shannon Miller described him as approximately 5′7″ tall. (Appellant's brief at 26.) Sean Miller stated that the shooter was wearing a black hoodie, whereas Shannon Miller and Canzoneri described him as wearing a gray sweater or hoodie. (*Id.*) Such minor discrepancies in the witnesses' testimony were for the jury to resolve. Certainly the jury's verdict does not shock one's sense of justice. The trial court did not abuse its discretion in denying appellant's motion for a new trial based on the weight of the evidence.

Finally, we address appellant's third and fourth claims together. Appellant argues that the trial court erred in denying his pre-trial motion *in limine* to exclude certain items of evidence recovered from his bedroom, including the ammunition and firing range targets. We determine that any error in this regard was harmless in the face of overwhelming evidence of guilt.

Pursuant to a search warrant for 342 Winton Street, police recovered two paper targets, some loose .32 caliber rounds of ammunition, and an empty box of .9 mm ammunition. The paper targets had six bullet holes in one and nine in the other. (Notes of testimony, 10/17/11 at 49–53.) One of the targets was a silhouette of a man holding a gun. (*Id.,* at 50.) One of the bullet holes was in the middle of the man's chest. (*Id.,* at 53.) These items were recovered from appellant's bedroom together with photographs of appellant and an appointment card in appellant's name. (*Id.,* at 55.) As stated above, Goods was shot with a .44 caliber firearm. Police did not recover any weapons or .44 caliber ammunition from the residence.

On October 5, 2011, appellant filed a motion *in limine* to exclude this evidence as irrelevant and prejudicial. In its response, the Commonwealth argued the evidence was admissible to show appellant was familiar with guns and target practice. (Commonwealth's "brief in opposition to defense motion to exclude evidence from search warrant," 10/7/11 at 5; docket # D4.) The Commonwealth also argued that it was relevant to prove specific intent to kill, since it demonstrated that appellant had the ability to fire an accurate shot. (*Id.*) Appellant's motion was denied, following oral argument.

■ Initially, we address the Commonwealth's claims of waiver. According to the Commonwealth, the matter is waived because although appellant filed a pre-trial motion *in limine* seeking exclusion of the evidence, he did not make an objection on the record to the court's ruling on the motion, nor did he object when the evidence was introduced at trial. (Commonwealth's brief at 10.) Pennsylvania Rule of Evidence 103, "Rulings on Evidence," provides, in relevant part:

> **(a) Preserving a Claim of Error.** A party may claim error in a ruling to admit or exclude evidence only:
>
> > (1) if the ruling admits evidence, a party, on the record:
> >
> > > (A) makes a timely objection, motion to strike, or motion *in limine* [.]

Pa.R.E., Rule 103(a)(1)(A), 42 Pa.C.S.A.

> **(b) Not Needing to Renew an Objection or Offer of Proof.** Once the court rules definitively on the record—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal.

Pa.R.E. 103(b).

> Pa.R.E. 103(a)(1) specifically refers to motions *in limine*. These motions are not mentioned in the Federal rule. Motions *in limine* permit the trial court to make rulings on evidence prior to trial or at trial but before the evidence is offered. Such motions can expedite the trial and assist in producing just determinations.

Pa.R.E. 103, Comment. *See also Commonwealth v. Metzer,* 430 Pa.Super. 217, 634 A.2d 228, 234 (1993) ("because our Supreme Court has held that a motion *in limine* is effectively the same as a motion to suppress, any ruling thereon is also final, conclusive, and binding at trial") (quotation marks and citation omitted). Appellant preserved the issue by litigating the pre-trial motion *in limine,* and was not required to object to the trial court's ruling on the motion or place an objection on the record at trial in order to preserve the issue for appeal.

The Commonwealth relies on *Commonwealth v. Colon,* 846 A.2d 747 (Pa.Super.2004), *appeal denied,* 582 Pa. 681, 870 A.2d 320 (2005). In that case, the appellant made an oral motion *in limine* on the first day of trial to exclude testimony that two weeks before the victim was killed, the murder weapon was used in a separate shooting incident. *Id.* at 752. The motion was immediately denied, and counsel did not make an objection on the record to the court's ruling on the motion. *Id.* The trial judge indicated that he would provide the jury with an appropriate cautionary instruction. *Id.* Counsel for the co-defendant acceded to the trial court's ruling and requested that the same limiting instruction be given when a second police officer also testified regarding the earlier shooting. *Id.* When the police officers were called to the stand to testify regarding the earlier shooting, counsel did not raise any objection. *Id.*

Finding that the appellant had waived his right to argue the issue on appeal, this court analogized the case to *Commonwealth v. Griffin,* 453 Pa.Super. 657, 684 A.2d 589 (1996).[3] *Id.* at 752–753. In *Griffin,* the appellant objected to certain testimony at trial. *Griffin,* 684 A.2d at 594–595. After a sidebar conference, the trial judge overruled the objection but offered to give a cautionary instruction to the jury,

---

**3.** We observe that *Griffin* was decided prior to the adoption of the Rules of Evidence on May 8, 1998, effective October 1, 1998.

if requested. *Id.* at 595. Defense counsel acceded to this ruling and requested a limiting instruction. *Id.* n. 10. There was no objection raised to the officer's testimony, and the trial court gave a limiting instruction to the jury as requested by defense counsel. *Id.*

A panel of this court found the issue to be waived for appeal purposes: "Appellant's counsel did not object to the ruling of the trial court, and in fact acceded to the judge's ruling. As a result we find that appellant has waived his right to argue this issue on appeal." *Id.*

We find both *Colon* and *Griffin* to be inapposite. First, in both *Colon* and *Griffin*, counsel did not raise the issue until trial. Indeed, *Griffin* did not even involve a motion *in limine* but a simple evidentiary objection. In the case *sub judice,* appellant filed his motion on October 5, 2011, one week before trial, the parties submitted briefs on the motion, and extensive argument was heard on October 11, 2011, the day before a jury was empaneled. (Notes of testimony, 10/11/11 at 160–180.) The trial court held the matter under advisement until the first day of trial in order to study the matter further. (*Id.* at 180.) The parties expended significant time and effort litigating this issue.

More importantly, it can hardly be said that appellant "acceded" in the trial court's disposition of his motion *in limine,* including issuing a cautionary instruction. Both *Colon* and *Griffin* found that counsel "acceded" to the trial judge's ruling. *Colon,* 846 A.2d at 752; *Griffin,* 684 A.2d at 595. Black's Law Dictionary, Eighth Edition, defines "accede" as "to consent or agree," or "to adopt." Instantly, on October 12, 2011, following jury *voir dire,* the trial court ruled on appellant's motion *in limine:*

THE COURT: Counsel, let's go back to the motion. Any further argument. Anywhere counsel case [sic].

[ADA LORRAINE DONNELLY, ESQ.]: No, Your Honor.

[DAVID B. MISCHAK, ESQ.]: No, Your Honor.

THE COURT: I'm going to deny the motion in limina [sic] and allow the red [sic] to be introduced for the limited purpose as indicated by the Commonwealth. The jurors will also receive a cautionary during my charge with regard to the use of that evidence. Anything further?

MS. DONNELLY: No, Your Honor.

MR. MISCHAK: No, Your Honor.

Notes of testimony, 10/12/11 at 26–27.

Clearly, while appellant did not expressly object to the ruling of the trial court, neither did he consent or agree to the ruling. Appellant did not accede to the ruling and request a cautionary instruction as in *Colon* and *Griffin.* Once the trial court made its ruling on appellant's motion *in limine,* it was final and conclusive. *Metzer, supra.* We fail to see how the issue is not adequately preserved for appeal.

The Commonwealth also contends that the matter is waived because appellant conflates his motion *in limine* with his motion to suppress, and his argument on appeal is underdeveloped and boilerplate. (Commonwealth's brief at 9, 11.) In addition to his motion *in limine,* appellant filed a motion to suppress on the basis that the search warrant was issued without probable cause. Indeed, at times he appears to confuse the two motions in his brief on appeal. (Appellant's brief at 27.) Nonetheless, it is clear that appellant is appealing the denial of his motion *in limine,* not his four-corners suppression motion, and although his argument could

be better developed, we deem it sufficient to enable meaningful review. The gist of appellant's argument is simply that the evidence found in his bedroom was irrelevant and prejudicial and therefore inadmissible. It is not a complicated argument requiring a great deal of extrapolation. Therefore, we decline the Commonwealth's invitation to find the entire matter waived.

When reviewing the denial of a motion *in limine*, we apply an evidentiary abuse of discretion standard of review. *See Commonwealth v. Zugay*, 2000 PA Super 15, 745 A.2d 639 (Pa.Super.), *appeal denied*, 568 Pa. 662, 795 A.2d 976 (Pa. 2000) (explaining that because a motion *in limine* is a procedure for obtaining a ruling on the admissibility of evidence prior to trial, which is similar to a ruling on a motion to suppress evidence, our standard of review of a motion *in limine* is the same as that of a motion to suppress). The admission of evidence is committed to the sound discretion of the trial court and our review is for an abuse of discretion. *See Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 704 (Pa.1999) [*affirmed in part, vacated in part on other grounds and remanded*, 471 F.3d 435 (3d Cir.Pa.2006)].

*Commonwealth v. Owens*, 929 A.2d 1187, 1190 (Pa.Super.2007), *appeal denied*, 596 Pa. 705, 940 A.2d 364 (2007).

The admissibility of evidence is a matter directed to the sound discretion of the trial court, and an appellate court may reverse only upon a showing that the trial court abused that discretion. *Commonwealth v. Wallace*, 522 Pa. 297, 561 A.2d 719 (Pa.1989). The threshold inquiry with admission of evidence is whether the evidence is relevant. "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." *Commonwealth v. Spiewak*, 533 Pa. 1, 8, 617 A.2d 696, 699 (1992). In addition, evidence is only admissible where the probative value of the evidence outweighs its prejudicial impact. *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978). However, where the evidence is not relevant there is no need to determine whether the probative value of the evidence outweighs its prejudicial impact. *Id.* Instead, once it is determined that the trial court erred in admitting the evidence, the inquiry becomes whether the appellate court is convinced beyond a reasonable doubt that such error was harmless. *Id.* Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict. *Commonwealth v. Simmons*, 541 Pa. 211, 662 A.2d 621 (1995) citing *Commonwealth v. Williams*, 524 Pa. 404, 573 A.2d 536 (1990).

*Commonwealth v. Robinson*, 554 Pa. 293, 304–305, 721 A.2d 344, 350 (1998), *cert. denied*, 528 U.S. 1082, 120 S.Ct. 804, 145 L.Ed.2d 677 (2000).

With regard to the admission of weapons evidence, such evidence is clearly admissible where it can be shown that the evidence was used in the crime charged. *Commonwealth v. Edwards*, 762 A.2d 382, 386 (Pa.Super.2000). Challenges to the admissibility of weap-

ons evidence often occur, however, where, as here, the evidence cannot be positively identified as related to the crime. *Robinson,* 554 Pa. at 306, 721 A.2d at 351 ("The general rule is that where a weapon can not be specifically linked to a crime, such weapon is not admissible as evidence."). *Owens,* 929 A.2d at 1191.

■ Instantly, the decedent victim was shot with a .44 caliber handgun. The police did not recover any firearms from appellant's home, nor did they find any .44 caliber ammunition. The empty box of .9 mm ammunition and the four loose rounds of .32 caliber ammunition were not related to the crime charged. In fact, the detective who carried out the search warrant conceded as much at trial. (Notes of testimony, 10/17/11 at 72.) We understand the Commonwealth's argument that the evidence, including the firing range targets with bullet holes, was admissible to show that appellant was familiar with firearms and had good aim. However, the Commonwealth has not cited any case for the proposition that the evidence was admissible to show specific intent to kill. We determine that to the extent it was relevant at all, its limited probative value was certainly outweighed by its prejudicial impact. The trial court erred by admitting this evidence. *See Robinson,* 554 Pa. at 306, 721 A.2d at 351 (error to admit photographs of defendant posing with a Star brand .9 mm handgun, ostensibly to show that he had knowledge and experience with .9 mm guns, where there was no testimony that the .9 mm Star gun in the photographs was used to commit the murder; rather, the testimony established that a different make of .9 mm gun was used in

the murder);[4] *Owens,* 929 A.2d at 1192 (error to admit rifle scopes, a scope mount, and rifle ammunition recovered from defendant's home where it was not relevant to the crimes in question; the defendant threatened the victims with a shotgun, and his co-defendant fired at them with handguns which were never found). *Cf. Commonwealth v. Broaster,* 863 A.2d 588 (Pa.Super.2004), *appeal denied,* 583 Pa. 667, 876 A.2d 392 (2005) (although the murder weapon, a .45 caliber semi-automatic pistol, was never recovered, trial court did not err in admitting into evidence a different .45 caliber semi-automatic handgun which the appellant discarded, where, *inter alia,* both guns were loaded with the same particular signature combination of bullets; the discarded gun was relevant to identify the appellant and connect him to the crime at issue).

The Commonwealth's reliance on *Broaster* in its brief in opposition to appellant's motion *in limine* is misplaced. *Broaster* is limited to its facts, particularly where the defendant in that case preferred to load his gun with the same number and distinctive combination of bullets. *Id.* at 592–593. Certainly *Broaster* does not stand for the proposition that anytime a defendant is charged in connection with a shooting, any weapons evidence recovered is admissible, even if it is completely unrelated to the crime.

Similarly, the Commonwealth cited *Commonwealth v. DeJesus,* 584 Pa. 29, 880 A.2d 608 (2005), in the court below, which is also distinguishable. There, our supreme court held the trial court did not err in permitting two witnesses to testify that the defendant was in possession of a sawed-off shotgun several months after the

---

4. The *Robinson* court also found that the trial court erred in admitting a .44 caliber revolver, .44 caliber rounds of ammunition, and a bulletproof vest, where the murder weapon was a .9 mm handgun and the items were not relevant to whether the defendant committed the crime in question. *Id.* at 308–309, 721 A.2d at 352–353.

murder, even though the murder was committed with an AK–47 assault rifle. However, the decision in *DeJesus* was based on the fact that the defendant had evaded arrest on at least one occasion since the murder, refused to give himself up despite being pressured to do so by his ex-girlfriend, and had made threatening remarks about the police. *Id.* at 41, 880 A.2d at 615. It was clear that the defendant knew he was a fugitive and intended to evade police custody, which suggested consciousness of guilt. *Id.* The court in *DeJesus* concluded that, taken in context, the testimony that the defendant possessed a sawed-off shotgun "was support for the implication that appellant was serious in his intention to continue to evade—indeed, that he had the means to repel—police custody." *Id.*

In so holding, the *DeJesus* court decided the issue on grounds different than those relied on by the trial court, which determined the evidence was admissible to show the defendant had a weapon similar to the one used in the crime charged. *Id.* at 38, 41 n. 8, 880 A.2d at 613, 615 n. 8. Our supreme court also emphasized that the trial court gave a limiting instruction to the jury, and that even if the testimony should have been excluded, its admission was harmless where the evidence was overwhelming, including the defendant's confession. *Id.* at 41–42, 880 A.2d at 615. Therefore, *DeJesus* does not control the instant case, where the evidence was admitted to demonstrate appellant's general familiarity with firearms, access to firearms, and skill in shooting.

We now turn to the issue of whether the error was harmless. As described above, several eyewitnesses identified appellant and testified that he shot the victims at close range, after a bar fight. Shaina Miller knew appellant prior to the night of the incident. Goods was shot in the chest, a vital part of his body. As the evidence of guilt in this case was fairly overwhelming, the error in admitting the above evidence did not contribute to the jury's verdict. Appellant's argument that four rounds of loose ammunition, an empty ammunition box, and two paper targets tainted the jury and tipped the balance against him strains credulity when considered in light of all the evidence, including Shaina Miller's testimony. Accordingly, as in *Robinson, supra,* and *Owens, supra,* the error was harmless.[5]

Judgment of sentence affirmed.

---

5. We also observe that the trial court gave the jury a limiting instruction. (Notes of testimony, 10/18/11 at 116–117.) Furthermore, as stated above, it was made clear to the jury that the victims were shot with a .44 caliber handgun and the evidence recovered from appellant's bedroom was not connected to the crimes charged. (Notes of testimony, 10/17/11 at 68–72.) *See Broaster,* 863 A.2d at 593 (noting that the jury was informed that the gun admitted into evidence was not the murder weapon and the court's charge to the jury explained the limited use to which they could put the defendant's possession of the discarded weapon).