J-S61013-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMIE L. HUGHES | |
| Appellant | No. 2071 EDA 2016 |

Appeal from the Judgment of Sentence February 12, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012631-2012

BEFORE:   LAZARUS, J., RANSOM, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED NOVEMBER 22, 2017**

Appellant Jamie Hughes appeals from his judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, following his conviction of aggravated assault,[1] endangering the welfare of a child,[2] simple assault,[3] and recklessly endangering another person.[4]  After review, we affirm.

The relevant factual and procedural history is as follows.  On January 9, 2012, Hughes' fiancée, Sonya Adams, asked Hughes to babysit her 21-month

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2702.

[2] 18 Pa.C.S. § 4304.

[3] 18 Pa.C.S. § 2701.

[4] 18 Pa.C.S. § 2705.

old daughter, A.J. Adams left for work at 5:45 a.m., leaving Hughes with sole custody of A.J. from 5:45 a.m. until the time of the injury at approximately 8:00 p.m. Around 7:45 p.m., Adams called Hughes to say that she was on her way home from work. At this point, A.J. was acting normally and was evidently uninjured. A few minutes later, Hughes called Adams back and stated that A.J. was badly hurt.

According to Hughes, he was in the restroom when he heard a thump. Upon investigating, he found that A.J. had been injured. When Hughes picked up A.J. to comfort her, she suffered a seizure and fainted in his arms. Hughes then called Adams, who urged him to call 911. A.J. was then taken by ambulance to the hospital for emergency medical treatment.

At the hospital, treating physicians identified multiple severe injuries, including four rib fractures, a subdural hemorrhage, hemorrhaging in both retinas, a swollen pancreas, and a torn liver. A.J. was also suffering from brain swelling and ischemia,[5] and she developed facial bruising. After receiving emergency treatment, A.J. spent more than a week in intensive care recovering from her injuries. Ultimately, the number and severity of A.J.'s injuries led hospital staff to conclude that this was a case of abuse, and

---

[5] Ischemia is deficient supply of blood to a body part (such as the heart or brain) that is due to obstruction of the inflow of arterial blood. "ischemia." Merriam-Webster Online Dictionary. 2017. https://www.merriam-webster. com/ dictionary/ischemia (2 Nov. 2017).

hospital staff notified the Pennsylvania Department of Human Services and the police.

After conducting an investigation, the police eventually issued an arrest warrant for Hughes on July 18, 2012. Hughes voluntarily turned himself in to the police on August 8, 2012 and subsequently posted bail. However, Hughes failed to appear for his court dates and the court issued a bench warrant on June 9, 2014. On April 7, 2015, Hughes was apprehended by the police and taken into custody.

The court held a bench trial on November 23, 2015. The trial court found Hughes guilty of all charges on December 2, 2015, and it sentenced him to four and one-half to nine years' incarceration followed by five years' probation. Hughes filed post-sentence motions challenging the weight and sufficiency of the evidence, and those motions were denied by operation of law on June 15, 2016. Hughes now appeals.

On appeal, Hughes raises two issues for our consideration. First, Hughes argues that his conviction was against the weight of the evidence. Next, he argues that the evidence was insufficient to sustain his conviction. After review, we affirm.

Because a weight of the evidence argument presupposes that the evidence is sufficient, we address sufficiency first. *See Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000).

> In reviewing the sufficiency of the evidence, we view all evidence admitted at trial in the light most favorable to the Commonwealth,

as verdict winner, to see whether there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to a crime beyond a reasonable doubt. Although a conviction must be based on more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty.

Moreover, when reviewing the sufficiency of the evidence, the Court may not substitute its judgment for that of the fact finder; if the record contains support for the convictions, they may not be disturbed.

*Commonwealth v. Stokes*, 78 A.3d 644, 649 (Pa. Super. 2013) (internal citations and quotations omitted).

Hughes was convicted of aggravated assault, simple assault, recklessly endangering another person, and endangering the welfare of a child. The relevant statutory definitions are as follows:

Aggravated Assault:

A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.][6]

\* \* \*

Simple Assault:

_____

[6] The aggravated assault statute was amended effective January 1, 2014 to include a more specific charge for aggravated assault of a child. Hughes was charged prior to this amendment. *See* 18 Pa.C.S. § 2702(a)(9).

Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:

(1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.][7]

*    *    *

Recklessly Endangering Another Person:

A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.

*    *    *

Endangering the Welfare of a Child:

(1) A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

18 Pa.C.S. §§ 2702(a)(1), 2701(a)(1), 2705 and 4304 respectively.

Viewed in the light most favorable to the Commonwealth as verdict-winner, the evidence was sufficient to support Hughes' conviction. Maria McColgan, M.D., one of A.J.'s treating physicians and an expert in pediatric abuse, stated that "in the absence of a history that would account for all of [A.J.'s] injuries, the diagnosis was physical abuse." N.T. Trial, 11/23/2015, at 13. Dr. McColgan further stated that the sort of short fall hypothesized by Hughes could not explain the number, nature, or severity of A.J.'s injuries,

_____

[7] Hughes' simple assault charge was merged with aggravated assault for sentencing purposes.

and Dr. McColgan reiterated that the injuries were inflicted rather than accidental. N.T. Trial, 11/23/2015, at 23-24. She also concluded that A.J.'s injuries were "severe," "very significant," and life-threatening. N.T. Trial, 11/23/2015, at 19-20.

While Dr. McColgan was not able to identify the precise timing of A.J.'s injuries, she testified that the liver injury was "a relatively acute injury" that was "hours, likely not days old." N.T. Trial, 11/23/2015, at 20. Likewise, A.J.'s traumatic brain injuries "certainly look[ed] to be acute or newer." N.T. Trial, 11/23/15, at 20. She therefore concluded that it was "very unlikely" that A.J.'s injuries would have happened "that many hours previously" with A.J. remaining asymptomatic during that time. N.T. Trial, 11/23/2015, at 24.

The evidence amply supports Hughes' conviction beyond a reasonable doubt. Put simply, the record established that A.J. experienced severe physical abuse, resulting in serious bodily injury, while in Hughes' sole custody. Due to the size, age, and strength difference between Hughes and the victim, the trial court had sufficient evidence to infer the requisite *mens rea* to support a conviction for aggravated assault. **See Commonwealth v. Smith**, 956 A.2d 1029, 1038 (Pa. Super. 2008) (en banc) (noting that "the enormous difference in size and strength" between an adult man and an infant supports conviction for aggravated assault where child abuse was proven through medical testimony).

Reckless endangerment and simple assault are lesser-included offenses of aggravated assault, and evidence sufficient to prove aggravated assault is sufficient to prove those offenses as well. *Commonwealth v. Brown*, 605 A.2d 429, 432 (Pa. Super. 1992) (finding that the elements of simple assault are met by a conviction for aggravated assault); *Commonwealth v. Smith*, 956 A.2d 1029, 1036 (Pa. Super. 2008) (en banc), appeal denied, 989 A.2d 917 (Pa. 2010) ("Reckless endangerment is a lesser included offense of aggravated assault and where the evidence is sufficient to support a claim of aggravated assault it is also sufficient to support a claim of recklessly endangering another person.").

Finally, the elements of endangering the welfare of a child are similarly proven by the evidence; Hughes was an adult supervising the welfare of a child under the age of 18, and he violated a duty of care by causing her severe physical injury. Making all reasonable inferences in favor of the Commonwealth as verdict winner, the evidence adduced at trial is sufficient to prove all charges. Accordingly, Hughes' first claim cannot stand.

Hughes next argues that the verdict was against the weight of the evidence. Hughes argues that the consistency of his testimony, his prompt response to A.J.'s injuries, and his cooperation with the police all support a finding that he was not responsible for A.J.'s injuries. He argues, in essence, that his actions after A.J.'s injury were not indicative of guilt, and that the trial

court failed to properly weigh this circumstantial evidence of his innocence. However, this argument lacks merit.

The standard of review for a weight of the evidence claim is abuse of discretion. **Widmer**, 744 A.2d at 751. Appellate review of a weight claim is "a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." **Id.** at 753. We will only overturn a trial court on the weight of the evidence if the verdict is "so contrary to the evidence that it shocks one's sense of justice." **Commonwealth v. Diggs**, 949 A.2d 873, 879 (Pa. 2008). In other words, "appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion." **Commonwealth v. Houser**, 18 A.3d 1128, 1135-1136 (Pa. 2011) (citations omitted). Finally, "the finder of fact, while passing upon the credibility of the witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence." **Commonwealth v. Estepp**, 17 A.3d 939, 943–944 (Pa. Super. 2011), appeal dismissed, 54 A.3d 22 (Pa. 2012).

It was not an abuse of discretion for the trial court to credit the testimony of Dr. McColgan or for it to discredit the testimony of Hughes. The resultant verdict does not shock our sense of justice, and Hughes' weight of the evidence claim must fail.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 11/22/2017*