J-S01029-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAFAEL MORA POLANCO | : | |
| | : | |
| Appellant | : | No. 990 MDA 2017 |

Appeal from the Judgment of Sentence February 6, 2017
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s):  CP-40-CR-0002569-2015

BEFORE:  GANTMAN, P.J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.:                    **FILED FEBRUARY 13, 2018**

Rafael Mora Polanco (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of first degree murder.[1]  Upon review, we affirm.

The trial court detailed the factual and procedural history of this case as follows:

> At approximately 10:30 p.m. on June 11, 2015, residents living on West Fourth Street in Hazelton heard several gunshots.  Police responded to the location of the shots and found the victim lying in a pool of blood in the middle of the street.  [The victim] had been shot six times and he was pronounced dead by an emergency room physician at the Lehigh Valley Hazelton Hospital on June 11, 2015 at 11:00 p.m.  An autopsy was performed on June 12, 2015 resulting in the cause of death being

---

[1] 18 Pa.C.S.A. § 2502(a).

multiple gunshot wounds and the manner of death being homicide. The victim had been shot five times in the head and once in the back. Video surveillance in the area recorded the incident.

During the investigation, it was determined that both [Appellant] and the victim were in an apartment located at 594 Alter Street in Hazelton immediately prior to the shooting. Several other individuals were also in the apartment including Joline Shafer, Paula Shafer, Kristen Lanzot and Tammy Grosz.

Joline Shafer testified that she knew the victim and he was like a father figure to her. She also testified that she knew [Appellant] for a month prior to the shooting and he was her drug dealer. She would normally see him once each day. He arrived at the Alter Street apartment between 10:00 p.m. and 10:15 p.m. on [June 11, 2015]. The victim had been at the apartment most of the day. After telling Ms. Shafer that he needed to get the victim out of the apartment due to something he had done, and putting his hand across his throat, [Appellant] left with the victim. Within seconds of leaving the apartment, Ms. Shafer heard the victim screaming.

Testimony of Paula Shafer was also presented by the Commonwealth. Paula knew the victim as a friend for six months to a year. She also knew [Appellant] for about two months and she would see him a few times each week. Her testimony indicated that the victim was at the apartment all day and [Appellant] arrived around 10:00 p.m. Shortly after his arrival, [Appellant] began speaking with the victim in Spanish. They then left the apartment and Paula heard a gunshot and the victim's voice. She looked out a window and saw [Appellant] chasing the victim towards Fourth Street. She then heard five more shots.

Kristin Lanzot was also at the apartment on June 1[1], 2015. She knew the victim as a good friend for approximately two years. She also knew [Appellant] for the same amount of time. Both [Appellant] and [the] victim were at the apartment that evening. After speaking with [Appellant] in the kitchen, she went to her room and

heard the victim screaming for his life. Kristin looked out of a window and saw the victim running through a yard with [Appellant] closely behind. As they were crossing the corner of Fourth and Alter Streets, she saw [Appellant] shoot the victim in the back. She was not sure how many total shots she may have heard.

One additional eye witness testified for the Commonwealth. Tammy Grosz was at the Alter Street apartment on June 11, 2015. She had known the victim for about a year or two and [Appellant] for ten to fifteen years. Tammy described [Appellant] as a good friend and she looked at him like a brother. She said [Appellant] arrived between 9:40 p.m. and 10:00 p.m. and he began speaking to the victim in Spanish. They then left the apartment together. Tammy heard the victim [scream] "no ma" and two to three gunshots. She then looked out a window and saw [Appellant] chasing the victim and shooting at him. Tammy then lost sight of [Appellant] and victim after they crossed Alter Street while running towards Fourth Street.

Although not a witness to the homicide, Divine Herrera-Caudle testified regarding a drug transaction involving himself, [Appellant] and the victim. Herrera-Caudle stated that he and the victim intended to sell an eight-ball of cocaine which they were to obtain from [Appellant]. During the transaction, [Appellant] felt Herrera-Caudle and the victim were trying to "burn" him. After providing Herrera-Caudle with the cocaine, [Appellant] grabbed it from his hand and said: "You guys trying to burn me. I got something for you two fucks." This incident occurred approximately four to five days prior to the homicide.

Jaime Bonner was the victim's girlfriend and she knew [Appellant] for a few months prior to June 11, 2015. She testified to a telephone conversation she had with [Appellant] at 6:00 p.m. the evening of the homicide. During this conversation, [Appellant] told her that Herrera-Caudle and the victim "ripped him off." He also asked her where the victim could be located and she told him he was at Paula Shafer's house.

[Appellant] attempted to set up an alibi defense with the assistance of a cell mate. While incarcerated at the Luzerne County Correctional Facility following the homicide in October of 2015, [Appellant] asked Stephen Pivinski to write a letter which indicated that he was at a store and the hospital at the time [the victim] was shot. Mr. Pivinski wrote the letter and gave it to [Appellant].

Hassan Harrell was also incarcerated at the Luzerne County Correctional Facility in the fall of 2015. He testified that [Appellant] provided him with a letter which he was to give to [Appellant's] girlfriend once he was released from prison on bail. Mr. Harrell read the letter and although it was four pages long, he remembered it stated that [someone named J.J.] should be blamed for the homicide. Because Mr. Harrell was not released on bail, [Appellant] took the letter back from him.

[Appellant] testified at trial that [at the time of the victim's murder] he walked five to seven blocks from his mother's house to a Turkey Hill to purchase cigarettes. He then obtained a ride from a former girlfriend, Deborah Deisenroth-Hilliard, to the hospital due to a cough he was experiencing. [Appellant] did not know when this occurred. A loss prevention manager for Turkey Hill testified that a video from June 11, 2015 shows a vehicle identified by Deborah Deisenroth-Hilliard as hers, entering the Turkey Hill parking lot at 10:58 p.m. Ms. Deisenroth-Hilliard had testified that she received a call from [Appellant] at 10:41 p.m. on June 11, 2015 requesting that she pick him up at Turkey Hill and take him to the hospital. Her residence was located approximately ten to fifteen minutes away from Turkey Hill. The shooting took place eleven minutes before [Appellant] called Ms. Deisenroth-Hilliard.

A criminal complaint was filed against [Appellant] on June 14, 2015. He maintained his innocence and proceeded to trial.

Trial Court Opinion, 8/14/17, at 1-5 (unpaginated).

At the conclusion of the trial on February 6, 2017, the jury found Appellant guilty of first-degree murder under Section 2502(a).[2] That same day, the trial court sentenced Appellant to life in prison without parole. Appellant filed a timely post-sentence motion on February 10, 2017.[3] The trial court denied Appellant's motion on June 12, 2017, and Appellant filed this timely appeal. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents a single issue for our review:

> Whether the Commonwealth failed to prove by sufficient evidence that the Appellant committed the crime of First Degree Murder.

Appellant's Brief at 1.

---

[2] Section 2502(a) states:

> (a) Murder of the first degree. -- A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

18 Pa.C.S.A. § 2502(a).

[3] Appellant's post-sentence motion challenges both the weight and sufficiency of the evidence, seeking judgment of acquittal or, in the alternative, a new trial. Appellant's Post Sentence Motion, 2/10/17, at 1-2. However, Appellant does not challenge the weight of the evidence in his concise statement of errors complained of on appeal under Pa.R.A.P. 1925, and, in his brief, he presents only a sufficiency claim. Appellant has therefore waived his weight claim. *See, e.g., Commonwealth v. Bullock*, 948 A.2d 818, 823 (Pa. Super. 2008) (where a trial court directs a concise statement, any issues not raised in that statement shall be waived), *appeal denied*, 968 A.2d 1280 (Pa. 2009).

Appellant challenges the sufficiency of the evidence supporting his conviction. Specifically, Appellant contends that "[t]he Commonwealth's evidence was comprised of witnesses, all of which were admitted drug abusers with inconsistent memories of the incident," and that the Commonwealth failed to prove that he possessed specific intent to kill the victim. Appellant's Brief at 4-5. Appellant states that "the record is lacking of any evidence proving that this action was premeditated or planned in any way by the Appellant; rather, the record suggests that the Appellant and the victim may have merely had a chance encounter on the date of the incident and that a third party shot and killed the victim." *Id.* at 5-6. Appellant further argues that he "presented evidence of an alibi defense which it made it impossible for him to have committed this crime." *Id.* at 6.

Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. *See, e.g., Commonwealth v. Giron*, 155 A.3d 635, 638 (Pa. Super. 2017) (citation omitted). In reviewing Appellant's sufficiency claim, we are mindful of our standard of review.

> The standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom is sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element beyond a reasonable doubt by means of wholly circumstantial evidence.

> The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record. Therefore, we will not disturb the verdict unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

*Commonwealth v. Von Evans*, 163 A.3d 980, 983 (Pa. Super. 2017), *appeal denied sub nom.*, *Commonwealth v. Evans*, 170 A.3d 1023 (Pa. 2017) (citation omitted). "Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered." *Commonwealth v. Fortson*, 165 A.3d 10, 15 (Pa. Super. 2017), *appeal denied*, 174 A.3d 558 (Pa. 2017).

Appellant challenges his conviction of first-degree murder. A defendant is guilty of first-degree murder when he intentionally kills another human being. 18 Pa.C.S.A. §§ 2501, 2502(a). An intentional killing is defined, in relevant part, as a "willful, deliberate and premeditated killing." 18 Pa.C.S.A. § 2502(d). To sustain a conviction for first degree murder, the Commonwealth must establish beyond a reasonable doubt that: (1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and the specific intent to kill. The Crimes Code defines an intentional killing as a "willful, deliberate and premeditated killing." *Commonwealth v. Cash*, 137 A.3d 1262, 1269 (Pa. 2016), *cert. denied sub nom. Cash v. Pennsylvania*,

137 S. Ct. 1202, 197 L. Ed. 2d 249 (2017). Specific intent to kill may be proven where the defendant knowingly applies deadly force to another, and a jury may infer specific intent from the defendant's use of a weapon on a vital part of the victim's body. *Commonwealth v. Stokes*, 78 A.3d 644, 650 (Pa. Super. 2013), *appeal denied*, 89 A.3d 661 (Pa. 2014).

Here, Appellant assails both the second and third prongs required to support his first-degree murder the conviction; he contends that the Commonwealth failed to present evidence sufficient to prove that he was responsible for killing, and that he possessed the specific intent to kill the victim. Appellant's Brief at 4-6. In addressing the second prong, Appellant argues that he proffered "a credible alibi defense that was sufficient to create a reasonable doubt that he did not kill the victim." *Id.* at 8. Appellant asserts that his alibi defense made it impossible for him to have killed the victim. *Id.* at 9. Appellant relies on three cases that speak to the general proposition that "an alibi is a defense that places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party," and that "the burden is solely on the Commonwealth to prove that the defendant was present during the commission of the crime." *Id.* at 8.[4]

_____

[4] Appellant cites the following cases: *Commonwealth v. Rainey*, 928 A.2d 215, 234 (Pa. 2007); *Commonwealth v. Gainer*, 580 A.2d 333, 336

*(Footnote Continued Next Page)*

Appellant's reliance on these authorities is not persuasive because these cases only address whether an alibi jury instruction is warranted and whether a failure to charge the jury for such an instruction constitutes reversible error. **See, e.g., Pounds**, 417 A.2d at 602. Here, the record reflects that Appellant's counsel offered notice of an alibi defense and the trial court admitted Appellant's testimony and evidence relative to the alibi.[5] Further, the trial court charged the jury with the following alibi instruction:

> In this case, [Appellant] has presented evidence of a alibi; that is, that he was not present at the scene or was rather at another location at the precise time that the crime took place. You should consider this evidence, along with all the other evidence in the case, in determining whether the Commonwealth has met its burden of proving beyond a reasonable doubt that a crime was committed, and that [Appellant], himself, committed it.
>
> [Appellant's] evidence that he was not present, either by itself or together with other evidence, may be sufficient to raise a reasonable doubt of his guilt. If you have a reasonable doubt of [Appellant's] guilt, you must find him not guilty.

N.T., 2/6/17, at 1181-1182. The jury was free to assess Appellant's credibility and believe or disbelieve his alibi. "As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record." **Von Evans**, 163 A.3d at 983 (citation omitted). On appeal,

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯

(Pa. Super. 1990), **appeal denied**, 602 A.2d 856 (Pa. 1992); and **Commonwealth v. Pounds**, 417 A.2d 597, 602 (Pa. 1980).

[5] **See** Notice of Alibi, 1/15/16; **see also** N.T., 2/3/17, at 1034-1044.

Appellant generally asserts that it would have been impossible for him to commit the murder, but he fails to specifically refute the trial court's suggestion that, "[e]ven if the jury believed [Appellant's] testimony, [he] still had an opportunity to commit the murder, walk to Turkey Hill and obtain a ride to the hospital based on the facts established in this case." Trial Court Opinion, 8/14/17, at 8. We agree with the trial court that there was sufficient evidence upon which the jury could reject Appellant's alibi and find that Appellant killed the victim.

Next, in arguing that the Commonwealth failed to prove "specific intent," Appellant attempts to discredit the testimony of the Commonwealth witnesses, contending that they "were drug-addicted reprobates, some of which were seeking to curry favor with the Commonwealth for pending charges, [while] others readily admitted that they were high at the time of the incident, thus rendering their testimony less than credible." Appellant's Brief at 8-9.

In addressing Appellant's specific intent to kill the victim, the trial court explained:

> Four eye witnesses saw or heard the shooting on June 11, 2015. Three of those saw [Appellant] chasing the victim while hearing gun shots. Two actually saw [Appellant] shoot the victim.
>
> With regard to specific intent to kill, the autopsy revealed that [the victim] had been shot a total of six times. Once in the back and five times in the head. Six gun shots should be sufficient to establish a specific intent to kill. When five of those shots enter the victim's head,

- 10 -

there can be no doubt as to the intent of the shooter. [Appellant] used a deadly weapon on a vital part of the victim's body a minimum of five times. The evidence presented by the Commonwealth was more than sufficient to allow a jury to conclude that the elements of first degree murder had been proven beyond a reasonable doubt, including the specific intent to kill.

Trial Court Opinion, 8/14/17, at 7 (unpaginated).

Appellant improperly views the evidence in a light most favorable to himself, rather than the Commonwealth, the verdict winner. As set forth above, "we will not disturb the verdict unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." ***Von Evans***, 163 A.3d at 983. In addition, while Appellant references a dearth of evidence supporting premeditation or planning, he fails to acknowledge the inference that may be drawn by the use of a deadly weapon upon a vital part of the body. ***See, e.g., Stokes***, 78 A.3d at 650. In sum, and for the above reasons, we find no merit to Appellant's sufficiency claim and therefore affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/13/2018

- 11 -