J-S18003-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :    IN THE SUPERIOR COURT OF
                                                       :                PENNSYLVANIA
                                                        :

                v.                                      :
                                                        :

AUSTIN PATRICK HAITOS            :
                                                        :

               Appellant                 :     No. 1788 MDA 2018

Appeal from the Judgment of Sentence Entered June 13, 2018
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s):  CP-38-CR-0000526-2017

BEFORE:   BOWES, J., NICHOLS, J., and STEVENS*, P.J.E.

MEMORANDUM BY BOWES, J.:           **FILED: JULY 25, 2019**

Austin Patrick Haitos appeals from his judgment of sentence of four to ten years imprisonment, imposed after he was convicted by a jury of one count each of involuntary deviate sexual intercourse ("IDSI") and sexual assault, and two counts of indecent assault.  After thorough review, we affirm.

The trial court summarized the evidence adduced at trial as follows:

> [The victim] S.C. testified that on December 31, 2016, her family held a New Year's Eve party at the family house ("the Party"), to which she and her four siblings had invited approximately forty to fifty friends.  There was alcohol at the party and the house had been accommodated for the attendees to sleep over.  While some attendees arrived earlier, most began to arrive between 9 P.M. and 9:30 P.M.   S.C. admitted that she had been drinking on the night of the party as well.  S.C. testified that attendees began to go to sleep or leave the party around 2:30 A.M.
>
> S.C. went to sleep in the lower basement on a couch with a friend laying behind her.  S.C. then woke up and felt a penis being thrusted into her mouth.  S.C. did not see the face of the person who had inserted his penis into her mouth while she was asleep,

---
\*   Former Justice specially assigned to the Superior Court.

but she saw his legs and she saw the person pull his pants up, turn around and begin rapidly walking away. S.C. was able to identify the individual as [Appellant] from the unique outfit he was wearing the night of the party and from his unique gait. S.C. has known [Appellant] most of her life and [Appellant] lived within walking distance of the family home. As [Appellant] was walking away, S.C. called out after him to stop and come back, but [Appellant] continued to walk way.

S.C then sat up and texted her siblings through her mobile phone, explaining what [Appellant] had done and stating that he was no longer welcome at the house. S.C. also texted [Appellant] that he was never welcome in the house and never to talk to S.C. again. S.C. then spoke to [Appellant] on the phone, asking [Appellant] where he was and demanding that he return to the house. When [Appellant] indicated to S.C. that he was still at the house, S.C. proceeded upstairs and began yelling, screaming and crying at [Appellant] over the phone. S.C. confronted [Appellant] outside of the house, continuing to yell at and push [Appellant] as he denied any knowledge of the incident. S.C. stated that she didn't believe [Appellant] and told him "I hope you die," and "never to talk to her again."

S.C. proceeded back into the house and continued to cry and talk to friends. S.C.'s brother, Ciaran, came downstairs and talked with S.C. about the incident and then walked outside where [Appellant] was still located. Not wanting Ciaran to get into a fight with [Appellant], S.C. testified that she followed her brother outside and was trying to get [Appellant] to go home and Ciaran back inside. S.C.'s mother then came outside, told [Appellant] to go home, and S.C., her mother and Ciaran reentered the house.

Trial Court Opinion, 10/19/18, at 2-3.

S.C.'s mother took her to the hospital, where police were notified and S.C.'s mouth was swabbed for evidence and blood was drawn. Thereafter, Appellant's clothing was collected and tested for DNA, but results were inconclusive.

Jessie Lenton testified at trial that he and Appellant were going to watch a movie at about 4 a.m. N.T., 2/27/18, at 138. As he was setting up the movie, Appellant mentioned to him that S.C. "looked hot" that night. *Id*. at 141. Shortly thereafter, Mr. Lenton excused himself to go to the restroom, and when he returned, Appellant was gone. Ten to fifteen minutes later, Mr. Lenton heard S.C. screaming and crying as she moved throughout the house. Appellant reentered the living room from the rear of the house mumbling about his coat and exited through the front door. Mr. Lenton observed S.C. as she went to the front door and yelled at Appellant.

Nicholas Hong confirmed the victim's testimony that Appellant's clothing and gait were unique. He testified that Appellant was wearing a distinctive colorful shirt, that he walks on his toes, and that he is "a little bowlegged." N.T. 2/27/18, at 123. Sarah Black recounted how Appellant, whom she did not previously know, sat next to her on the couch earlier that evening and stroked the inside of her thigh under her dress without her consent.[1] *Id*. at 131.

---

[1] This incident was one of five incidents where Appellant, who was drinking, made unwanted sexual advances at parties where women were drinking. One incident involved the complainant herein in 2011. The Commonwealth served notice of its intent to introduce this Pa.R.E. 404(b) bad acts evidence, maintaining that the evidence showed a common scheme or plan. Following a hearing, the trial court refused to permit evidence of any incident except that involving Ms. Black, which it viewed as part of the *res gestae* of the events leading up to the crimes charged. It also ruled, however, that if Appellant raised consent of the victim as a defense, it would permit introduction of the other bad acts. Order, 2/21/18, at 1. The certified record does not contain a transcript of the hearing.

Following his sentencing, Appellant timely filed a post-sentence motion alleging error in the admission of bad acts evidence, and that the verdict was against the weight of the evidence. The trial court denied relief, Appellant appealed, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents two issues for our review:

1) Did the Honorable Trial Court err and commit an abuse of discretion in admitting the testimony of Sarah Black, which was inadmissible pursuant to Pa.R.Evid. 404(b)?

2) Did the Honorable Trial Court err and commit an abuse of discretion by denying a new trial on basis that the verdict was against the weight of the evidence?

Appellant's brief at 4.

Appellant's first issue presents a challenge to an evidentiary ruling. The admissibility of evidence is a matter directed to the sound discretion of the trial court, and an appellate court may reverse only upon a showing that the trial court abused that discretion. *Commonwealth v. Stokes*, 78 A.3d 644, 654 (Pa.Super. 2013). If it is determined that there was error in the admission of evidence, our inquiry does not end there. We must determine whether the error was harmless beyond a reasonable doubt. *Id*. "Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so

insignificant by comparison that the error could not have contributed to the verdict. *Id*. at 654.

We start from the premise that only relevant evidence is admissible. However, even relevant evidence may be excluded if its probative value is outweighed by its potential for prejudice. "The probative value of the evidence might be outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, pointlessness of presentation, or unnecessary presentation of cumulative evidence." ***Commonwealth v. Antidormi***, 84 A.3d 736, 750 (Pa.Super. 2014).

At issue herein is the admissibility of prior bad acts evidence under Pa.R.E. 404(b). "Evidence of separate or unrelated 'crimes, wrongs, or acts,' is generally deemed inadmissible against a criminal defendant in this Commonwealth as a matter not of relevance, but of policy, *i.e.*, because of a fear that such evidence is so powerful that the jury might misuse the evidence and convict based solely upon criminal propensity." ***Commonwealth v. Dillon***, 925 A.2d 131, 136 (Pa. 2007). Consequently, Pa.R.E. 404(b) renders evidence of prior bad acts inadmissible when proffered to prove a defendant's bad character or propensity to commit a crime. That rule provides:

> (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> (2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of

> mistake, or lack of accident.  In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b).

As the trial court noted, however, the exceptions in subsection (2) are not exclusive.  The Supreme Court recognized in **Commonwealth v. Lark**, 543 A.2d 491, 497 (Pa. 1988), that other bad acts evidence may be relevant where it was part of the chain or sequence of events which became part of the history of the case.  This is commonly known as the *res gestae* exception, and makes bad acts evidence admissible when it offers context with events close in time and place to the crime.  **See Dillon**, **supra** at 137 (finding evidence of appellant's physical abuse of victim's mother and brother relevant to explain the events surrounding the sexual assaults and victim's delay in reporting); **see also Commonwealth v. Williams**, 896 A.2d 523, 539-540 (Pa. 2006) (finding bad acts testimony that connected appellant to murder weapon and sequence of events leading up to murder admissible under *res gestae* exception).

The testimony at issue consisted of the following.  Ms. Black met Appellant for the first time at the New Year's Eve party at the victim's home.  A few hours before the assault on S.C., Appellant was sitting next to her on the couch.  He placed his hand on Ms. Black's leg, stroked it, and touched the inside of her thigh under her dress.  Ms. Black stood up and exited the room,

dismissing Appellant's conduct as "being a dumb drunk kid." N.T., 2/27/18, at 131.

The trial court ruled that such prior bad acts testimony was admissible under the *res gestae* exception to Pa.R.E. 404(b). The court reasoned that Ms. Black's testimony about Appellant's conduct was not admitted to show his proclivity for criminal behavior, but instead as part of the natural development of the facts. Trial Court Opinion, 10/19/18, at 13. The trial court viewed the evidence as providing context in which to view the party and the victim's testimony. The court found further that Appellant's conduct as described by Ms. Black did not rise to the level of undue prejudice or have a tendency to inflame the jury.

Appellant contends that the trial court erred in admitting the foregoing testimony of Ms. Black under Pa.R.E. 404(b). He alleges that the trial court erroneously concluded that the testimony was relevant in showing the complete picture of the events of the evening under the *res gestae* exception. Furthermore, he complains that the court erred in failing to give a limiting instruction to the jury. Appellant contends that any probative value of Ms. Black's testimony was outweighed by its prejudicial effect, and thus, its admission was not harmless.

The Commonwealth counters that since counsel did not request a limiting instruction regarding prior bad acts, or object to the court's failure to give one, any alleged error in failing to give such an instruction is waived for

purposes of direct appeal. Second, the Commonwealth contends that Ms. Black's account was not prior bad acts testimony, but simply evidence probative of Appellant's state of mind at the party. In order to prevail on the charge of indecent assault, the Commonwealth had to prove that Appellant engaged in contact with S.C. for purposes of sexual gratification. According to the Commonwealth, the foregoing evidence, in conjunction with testimony of Jessie Lenton that, immediately prior to the assault, Appellant commented to him that S.C. "looked hot," was circumstantial evidence from which the jury could conclude that Appellant engaged in the charged conduct for sexual gratification, an element of the offense of indecent assault.

Evidence is relevant if it establishes a material fact, or makes a fact at issue more or less probable, or supports a reasonable inference supporting a material fact, and its probative value outweighs the likelihood of unfair prejudice. *See Commonwealth v. Boczkowski*, 846 A.2d 75, 88 (Pa. 2004). Ms. Black's testimony was relevant as it tended to establish Appellant's state of mind close in time to the sexual assault, which was probative of a material element of the offense of indecent assault: that Appellant's indecent contact with the complainant was for the purpose of arousing sexual desire in himself or the complainant, and not a prank or mistake. *See* 18 Pa.C.S. § 3126(a). We recognize, however, that generally, evidence of prior bad acts is barred not because of irrelevancy, but rather because the risk of unfair prejudice from such evidence is high despite its relevancy. *Boczkowski*,

*supra* at 88. The trial court found, however, that Appellant's behavior toward Ms. Black "would likely be viewed as distasteful and inappropriate by some," but that the evidence did not rise "to the level of inflaming the jury" or unfair prejudice against Appellant. Trial Court Opinion, 1/19/18, at 15. We find no abuse of discretion on the part of the trial court.

Appellant argues that the trial court erred in failing to give a limiting instruction about the evidence. Where evidence of a defendant's prior bad acts is admitted, the defendant is entitled to a jury instruction that the evidence is admissible only for a limited purpose. ***Commonwealth v. Hutchinson***, 811 A.2d 556, 561 (Pa. 2002). However, counsel did not request such an instruction, perhaps because Ms. Black's testimony was not particularly inflammatory, or because counsel wished to downplay its significance. ***See Commonwealth v. Solano***, 129 A.3d 1156, 1178 (Pa. 2015) (citing ***Hutchinson***, ***supra*** at 561-62, for proposition that where reference to bad act is fleeting or vague, counsel may reasonably decline to request a limiting instruction). Regardless of counsel's motivation, Appellant's claim of error premised on the trial court's failure to give a limiting instruction is waived as he did not request such an instruction at trial, or object to the court's failure to give such an instruction. ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). For the foregoing reasons, we find no error surrounding the admission of Ms. Black's testimony.

Appellant's final claim is that the verdict was against the weight of the evidence. He points out that the victim did not see the face of the person who sexually assaulted her, the lighting was poor, there were no witnesses, and she had been drinking. In the absence of DNA evidence, Appellant alleges that her uncorroborated identification of Appellant as the person who assaulted her was so unreliable as to render the verdict against the weight of the evidence. Appellant's brief at 17-18.

A challenge to the weight of the evidence is addressed to the sound discretion of the trial court. **Commonwealth v. Widmer**, 744 A.2d 745, 751-52 (Pa. 2000). Our High Court cautioned,

> A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."

**Id**. at 751-52.

Our review of the trial court's determination whether a new trial is warranted on this ground

> **is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence**. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting a new

- 10 -

trial is the lower court's conviction that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis in original) (citations omitted) (quoting *Widmer*, *supra* at 753).

The trial court correctly noted that the credibility of witnesses and the weight of the evidence are the province of the fact-finder, "who is free to believe all, part, or none of the evidence." *Commonwealth v. Williams*, 854 A.2d 440, 445 (Pa. 2004). It acknowledged that while there were circumstances that tended to undermine the victim's ability to identify her assailant, her overall awareness and observation of Appellant's clothing and his unique gait based on her lifelong familiarity of Appellant overcame those deficiencies. Trial Court Opinion, 10/19/18, at 18. The trial court found no basis to disturb the jury's verdict. We find no abuse of discretion on the part of the trial court, and hence, Appellant is not entitled to a new trial on this ground.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/25/2019

- 11 -