J-S34019-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
         :         PENNSYLVANIA
         :
     v.          :
         :
         :
DENNIS NEAL ANDERSON          :
         :
     Appellant          :    No. 111 MDA 2020

Appeal from the Judgment of Sentence Entered December 10, 2019
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0002754-2019

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:       **FILED SEPTEMBER 30, 2020**

Appellant, Dennis Neal Anderson, appeals from the judgment of

sentence of 5-10 years' imprisonment, imposed after a jury convicted him of

possession with intent to deliver a controlled substance (PWID), 35 P.S. §

780-113(a)(30), and possession of a controlled substance, 35 P.S. § 780-

113(a)(16).  We affirm.

The trial court summarized the procedural and factual background of

this case as follows:

### PROCEDURAL HISTORY

[Appellant] was charged with [PWID] and possession of a
controlled substance arising from an incident alleged to have
occurred on June 6, 2019.  On November 20, 2019, a jury found
[Appellant] guilty of both counts.  On December 10, 2019,
[Appellant] was sentenced to serve 5 to 10 years in a state
correctional facility for committing [PWID].  The offense of
possession of a controlled substance merged for sentencing.  On
December 20, 2019, [Appellant] filed a Motion for Post–Sentence

Relief[,] which this court denied by order dated December 30, 2019.

On January 8, 2020, [Appellant] filed a Notice of Appeal to the Superior Court of Pennsylvania from the orders of December 10, 2019, and December 30, 2019.[1]  On January 15, 2020, [Appellant] was ordered to file a [Pa.R.A.P. 1925(b)] concise statement of matters complained of on appeal within 21 days from the order's entry on the docket.  However, [Appellant] had already filed a concise statement of matters complained of on appeal on January 8, 2020.  Within his concise statement, [Appellant] challenged the sufficiency of the evidence, the weight of the evidence, his sentence[,] and the denial of his motion *in limine*.

## DISCUSSION

## Statement of Facts

On June 6, 2019, at approximately 7:20 p.m., Criminal Investigator Andrew Seiler ("C.I. Seiler") and Sergeant Darren Smith ("Sergeant Smith") of the Reading Police Department were conducting surveillance at the Doerrheim Apartments located at 150 S. 5th Street, Reading, Berks County, Pennsylvania.  This location is known for being high in drug sales.  Both officers were wearing a vest with police insignia on the front and back.  C.I. Seiler and Sergeant Smith were in an unmarked police vehicle.  Sergeant Smith was in the driver's seat[,] and C.I. Seiler was seated in the front passenger seat with his window partially down.

While in their unmarked vehicle, the officers observed [Appellant] seated on the steps at the Doerrheim Apartments.  A white male approached [Appellant] and dropped items between [Appellant's] legs.  The objects dropped between [Appellant's] legs made a sound consistent with change hitting concrete. C.I. Seiler believed that he had just witnessed a partial exchange between [Appellant] and the white male.  The officers circled around the block but both [Appellant] and the white male were gone.  Within 5 minutes, the officers were stopped at an intersection and observed [Appellant]

---

[1] Though Appellant purported to appeal from the trial court's December 30, 2019 order denying his post-sentence motion, we note that, "[i]n a criminal action, appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions."  ***Commonwealth v. Shamberger***, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) (citation omitted).

and a black female cross in front of them. [Appellant] and the black female were engaging in small talk[,] and [Appellant] appeared to be counting small objects in his hands. The officers double-parked their vehicle, exited[,] and walked towards [Appellant].

As the officers approached [Appellant], C.I. Seiler observed that [Appellant] was in possession of a blue, transparent zip top bag containing a white, hard, rock-like substance. C.I. Seiler immediately recognized the substance as crack cocaine. C.I. Seiler asked [Appellant] to turn over the bag of crack cocaine. In response, [Appellant] cupped his hand to conceal the bag. C.I. Seiler then instructed [Appellant] to sit on nearby steps and again asked him to give him the bag. [Appellant] handed over the bag and was placed under arrest. The bag in [Appellant's] hand contained twenty-one hundredths of a gram of cocaine. Sergeant Smith searched [Appellant] and located an additional 13 bags in [Appellant's] right front pants pocket. The bags contained a total of 2 grams of cocaine. In [Appellant's] left front pants pocket, Sergeant Smith located two additional bags and a blue pill. The contents of one of those bags contained nine hundredths of a gram of cocaine. The other bag and the pill did not test positive for controlled substances. [Appellant] was also in possession of $76.85 in U.S. currency. He did not have any instruments on him that could have been used to ingest these drugs.

After [Appellant] was placed under arrest, C.I. Seiler read him *Miranda*[2] warnings. [Appellant] agreed to speak to C.I. Seiler without an attorney. [Appellant] stated that he was selling "one of these bags" of cocaine for $10 each to make a little extra money.

Trial Court Opinion (TCO), 3/26/20, at 1-3 (internal citations and footnotes omitted).

Presently, Appellant raises the following issues for our review:

[1.] Whether the Commonwealth presented sufficient evidence that … Appellant had the requisite intent to deliver the controlled substance in his possession beyond a reasonable doubt.

_____

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2.] Whether the verdict against Appellant for [PWID] was against the weight of the evidence.

[3.] Whether the trial court erred in denying Appellant's [m]otion *[i]n [l]imine* to exclude evidence that was not relevant to any disputed facts at trial.

[4.] Whether the trial court abused its discretion in imposing an excessive sentence on Appellant.

Appellant's Brief at 9.[3]

## Issue 1

In Appellant's first issue, he argues that, "[w]hen viewed in the light more favorable to the Commonwealth, the evidence presented at trial was insufficient to establish the elements of [PWID]." ***Id.*** at 26 (emphasis omitted). This Court has explained that,

> in evaluating a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt.
>
> We may not weigh the evidence and substitute our judgment for the fact-finder. To sustain a conviction, however, the facts and circumstances which the Commonwealth must prove must be such that every essential element of the crime is established beyond a reasonable doubt.

***Commonwealth v. Little***, 879 A.2d 293, 296-97 (Pa. Super. 2005) (internal citations omitted).

The statute under which Appellant was convicted for PWID prohibits:

[T]he manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or

_____

[3] We have reordered Appellant's issues for ease of disposition.

licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30).

"The Commonwealth establishes the offense of [PWID] when it proves beyond a reasonable doubt that the defendant possessed a controlled substance with the intent to deliver it." *Little*, 879 A.2d at 297 (citation omitted). "To determine whether the Commonwealth presented sufficient evidence to sustain [the defendant's] conviction for [PWID], all of the facts and circumstances surrounding the possession are relevant and the elements of the crime may be established by circumstantial evidence." *Id.* (citation omitted). Further, our Supreme Court has emphasized that,

> if the quantity of the controlled substance is not dispositive as to the intent, the court may look to other factors.
>
> > Other factors to consider when determining whether a defendant intended to deliver a controlled substance include the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and large[] sums of cash found in possession of the defendant. The final factor to be considered is expert testimony. "Expert opinion testimony is admissible concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use."

*Commonwealth v. Ratsamy*, 934 A.2d 1233, 1237-38 (Pa. 2007) (citation omitted).

Here, Appellant argues that "the amount of drugs found on [his] person is a small amount totaling just over 2[ grams]." Appellant's Brief at 31. He also points out that "[t]he amount of money located on [his] person is not a

- 5 -

significant amount, and an odd amount, and … there was no evidence presented that the money was the proceeds of a drug sale." *Id.* Further, he states that "there was nothing else seized from [him] that would be indicative of intent to sell. There was no cell phone, no paraphernalia to package the drugs, no ledger[,] and no firearm." *Id.*

We reject this argument. Appellant is essentially asking us to re-weigh the evidence, which we cannot do. *See Little*, 879 A.2d at 297. As the trial court reasoned,

> [t]he evidence presented by the Commonwealth established that [Appellant] was seen near the Doerrheim Apartments[,] which is an area known for drug sales. While [Appellant] was in this area, the officers witnessed a white male approach [Appellant] and drop change between his legs. C.I. Seiler believed he had just witnessed a partial transaction. [Appellant] was seen a few minutes later counting small objects in his hands. The jury could have inferred that he was counting the coins he was just given by the white male. When C.I. Seiler approached [Appellant], he observed that [Appellant] was in possession of crack cocaine. After being placed under arrest, Sergeant Smith discovered 14 additional bags of cocaine on [Appellant] (13 bags in his right front pants pocket and 1 bag in his left front pants pocket). He also located $76.85 in U.S. currency[,] and no drug paraphernalia.[4] Lastly, after receiving his *Miranda* warnings, [Appellant] admitted that he was selling these bags of cocaine for $10 each to make extra money. Therefore, when viewing the evidence in the light most favorable to the Commonwealth, the jury could have determined that all of the elements of [PWID] had been established beyond a reasonable doubt.

---

[4] The *Ratsamy* Court specifically observed that an intent to deliver can be inferred from circumstances like lack of paraphernalia for consumption. *Ratsamy*, 934 A.2d at 1238 (citation and footnote omitted).

TCO at 5-6.[5]  Looking at the evidence in the light most favorable to the Commonwealth as the verdict winner, we agree with the trial court that the evidence was sufficient to sustain Appellant's PWID conviction.[6]  Accordingly, no relief is due on this basis.

## Issue 2

In Appellant's second issue, he contends that his conviction for PWID was against the weight of the evidence.  We apply the following standard of review to such claims:

> As a general rule, the weight of the evidence is exclusively for the fact finder who is free to believe all, part or none of the evidence and to determine the credibility of the witnesses.  We cannot substitute our judgment for that of the finder of fact.  We may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice.  Moreover, where the trial court has ruled on the weight claim below, our role is not to consider the underlying question of whether the verdict is against the weight of the evidence.  Rather, appellate review is limited to whether the trial court palpably abused its discretion.

---

[5] The trial court additionally noted that it had prohibited the Commonwealth from calling an expert at trial to provide his opinion that Appellant possessed the drugs with the intent to deliver.  TCO at 6.  The trial court said it excluded the expert's testimony because Appellant had given "a statement admitting that he was selling the bags of cocaine in his possession for $10 each to make extra money.  It was clear to this court that, based on [Appellant's] statement, the jury could have easily comprehended that the drugs recovered from [Appellant] were possessed with intent to deliver without the assistance of the Commonwealth's expert…." ***Id.*** at 7.

[6] We also consider the cases cited by Appellant — ***Commonwealth v. Jackson***, 645 A.2d 1366 (Pa. Super. 1994), and ***Commonwealth v. Smagala***, 557 A.2d 347 (Pa. Super. 1989) — distinguishable, as the defendants in those cases did not admit that they intended to deliver the drugs they possessed.

*Commonwealth v. Castelhun*, 889 A.2d 1228, 1234 (Pa. Super. 2005) (internal citations and quotation marks omitted).

Appellant argues that the trial court abused its discretion in denying his weight claim "as the alleged statement made by Appellant with regard to selling crack cocaine was unreliable and the remaining evidence pointed to possession for personal use."  Appellant's Brief at 36.  With respect to Appellant's alleged statement, Appellant asserts that, on cross-examination, "C.I. Seiler said that he didn't recall [Appellant's] exact words and that he didn't write them down *verbatim*.  There was no written statement made by Appellant[,] and the officers did not take him into City Hall for a recorded interview."  *Id.* at 33-34 (citations omitted).

> In rejecting Appellant's weight claim, the trial court explained:
>
> [T]he verdict was not contrary to the evidence as the jury was presented with a case upon which to convict [Appellant].  The jury evaluated the evidence, determined the credibility of the witnesses and, when assessing the weight of the evidence, believed the evidence presented by the prosecution and rendered a guilty verdict.  Therefore, the verdict was consistent with the evidence presented and did not shock anyone's sense of justice.

TCO at 8.  We conclude that the trial court did not palpably abuse its discretion in reaching this conclusion.  Thus, no relief is warranted on this basis.

### **Issue 3**

In Appellant's third issue, he advances that "[t]he trial court abused its discretion in denying … Appellant's [m]otion *in* [*l*]*imine* to exclude any testimony by the officers up and until the point where they approached Appellant and observed he was in possession of a Ziploc baggie containing a

white substance, as it was not relevant to any disputed facts at trial."
Appellant's Brief at 43 (emphasis omitted). In reviewing this issue, we
acknowledge:

> When reviewing the denial of a motion *in limine*, we apply an
> evidentiary abuse of discretion standard of review. The admission
> of evidence is committed to the sound discretion of the trial court
> and our review is for an abuse of discretion.
>
> ***
>
> The admissibility of evidence is a matter directed to the sound
> discretion of the trial court, and an appellate court may reverse
> only upon a showing that the trial court abused that discretion.
> The threshold inquiry with admission of evidence is whether the
> evidence is relevant. Evidence is relevant if it logically tends to
> establish a material fact in the case, tends to make a fact at issue
> more or less probable, or supports a reasonable inference or
> presumption regarding the existence of a material fact. In
> addition, evidence is only admissible where the probative value of
> the evidence outweighs its prejudicial impact. However, where
> the evidence is not relevant there is no need to determine whether
> the probative value of the evidence outweighs its prejudicial
> impact. Instead, once it is determined that the trial court erred
> in admitting the evidence, the inquiry becomes whether the
> appellate court is convinced beyond a reasonable doubt that such
> error was harmless. Harmless error exists where: (1) the error
> did not prejudice the defendant or the prejudice was *de minimis*;
> (2) the erroneously admitted evidence was merely cumulative of
> other untainted evidence which was substantially similar to the
> erroneously admitted evidence; or (3) the properly admitted and
> uncontradicted evidence of guilt was so overwhelming and the
> prejudicial effect of the error was so insignificant by comparison
> that the error could not have contributed to the verdict.

**Commonwealth v. Stokes**, 78 A.3d 644, 654 (Pa. Super. 2013) (internal
citations and quotation marks omitted).

In the case *sub judice*, the trial court indicated that — in a similar vein
to the *res gestae* exception — it permitted this evidence "to complete the story

of the crime on trial by proving its immediate context of happenings near in time and place." TCO at 15 (citation omitted).[7] It explained that "there was no prejudice to [Appellant] in admitting this evidence as his behavior prior [to] the confrontation with the officers was neither a criminal act nor indicative of any criminal activity." *Id.*[8] Moreover, the trial court suggested that, "[i]f prior criminal acts can be admitted despite some risk of prejudice [through the *res gestae* exception], then non-criminal and non-prejudicial conduct is also admissible." *Id.*

Appellant contests the trial court's determination, arguing:

[T]he events leading up to the time that C.I. Seiler and [Sergeant] Smith approached Appellant are not relevant, as those events are not relevant to any disputed facts at trial. [] Appellant's behavior prior to the officers['] approaching him was not criminal nor indicative of any criminal behavior. This evidence does not have a tendency to make it more or less probable that Appellant possessed the cocaine or had the intent to deliver the cocaine in his possession. The events leading up to the time investigators

---

[7] "[T]he *res gestae* exception to the general proscription against evidence of other crimes, is also known as the 'complete story' rationale, *i.e.*, evidence of other criminal acts is admissible 'to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.'" *Commonwealth v. Brown*, 52 A.3d 320, 326 (Pa. Super. 2012) (citations omitted). "Our Supreme Court has consistently recognized that admission of distinct crimes may be proper where it is part of the history or natural development of the case, *i.e.*, the *res gestae* exception." *Id.* (citations omitted).

[8] In the trial court's pretrial memorandum, it had concluded that the police officers' observations of Appellant leading up to their approaching him on the street "did not independently establish reasonable suspicion of [Appellant's] involvement in criminal activity." TCO at 15. *See also* Commonwealth's Brief at 34 (noting that the actions observed by the officers before they approached Appellant on the street "were not sufficient to support charges when taken by themselves").

approached Appellant are simply non-criminal activities that have no bearing on the final determination of the case. Therefore, the trial court erred in admitting this evidence as it is not relevant.

To the extent the trial court relies on and discussed the "*res gestae*" exception to admissibility of other crimes evidence to support its decision…, the reliance is misplaced. [] Appellant at no time argued that the testimony sought to be excluded was evidence of another crime or criminal behavior. In fact, Appellant argued the opposite; that the events leading up to the point where officers approached Appellant did not tend to show any criminal activity and were in no way relevant to determine whether … Appellant possessed cocaine or possessed it with the intent to deliver. [] Appellant argued simply[] that those events are not relevant to any disputed facts at trial. Applying the "*res gestae*" standard is a misapplication of law and[,] therefore, an abuse of discretion.

The admission of the evidence sought to be excluded was not harmless error. While the evidence Appellant sought to exclude was not indicative of any criminal conduct, it was certainly implied by the Commonwealth's presentation of its case that Appellant's behavior prior to the approach of the officers was indicative of criminal behavior, and specifically, Appellant's alleged intent to deliver cocaine. The admissibility of this irrelevant evidence was prejudicial to … Appellant, especially considering the remaining evidence presented by the Commonwealth tending to show intent to possess the crack cocaine for personal use. As the trial court erroneously admitted irrelevant evidence and the admission of that evidence was not harmless error, … Appellant seeks a new trial.

Appellant's Brief at 45-46 (internal citation omitted).

In contrast, the Commonwealth insists:

The investigators' observations are relevant as circumstantial evidence of [PWID]…. When assessing a circumstantial case of [PWID], the surrounding circumstances and actions of Appellant are relevant. Both investigators testified that they were surveilling the apartment building where Appellant was first observed due to complaints about drug dealing from the building. They then witnessed what they believed to be an exchange. This led them to attempt to move closer, but when they came back around the block, Appellant was gone. They then found Appellant

- 11 -

speaking to another person and approached him. [C.I.] Seiler saw him holding a bag of crack cocaine. The jury should be able to examine Appellant's actions in the minutes leading up to his arrest in deciding what, if any, insight they may give into Appellant's intent.

If [this] examination led the jury to believe that Appellant's actions supported the charge of [PWID], that would be appropriate, as such an assessment … properly includes examination of all of the circumstances surrounding a defendant's possession of the drugs. As the trial court opined…, the *res gestae* exception to the rule against the admission of prior bad acts supports the introduction of this evidence….

If the jury's examination of those facts led the jury to believe that they could not infer anything regarding Appellant's intent to deliver from those actions, Appellant would not suffer any prejudice from the jury having heard those facts…. If the facts do not show any indication of [PWID], they also do not show any indication of any other criminal behavior, and therefore the jury could not be led to believe anything prejudicial about [Appellant], or be confused in any way as to the relevant issue before them, or be misled about anything. Therefore, the error in admitting it was truly harmless….

\*\*\*

[I]f the trial court erred in permitting the introduction of this evidence, Appellant suffered no prejudice, or such evidence was *de minimis*. Evidence of a man interacting with others on the street in the manner observed by the investigators prior to approaching him is not prejudicial in any way if it is not evidence of possible drug dealing. Additionally, the properly admitted evidence of Appellant's admission makes the prejudicial effect of the investigators' observations so insignificant that they would not and could not have contributed to the verdict.

Commonwealth's Brief at 30-32 (internal citations omitted).

Appellant has not persuaded us that the trial court abused its discretion by admitting this evidence due to its irrelevance. As the Commonwealth discerns, in deciding a case of PWID, "all of the facts and circumstances surrounding the possession are relevant and the elements of the crime may

be established by circumstantial evidence." *Little*, 879 A.2d at 297 (citation omitted); *see also Ratsamy*, *supra* (identifying the defendant's behavior as a relevant factor in determining whether a defendant intended to deliver a controlled substance). Here, the trial court specifically acknowledged the relevance of this evidence, stating that, "[w]hile [Appellant] was in this area [known for drug sales], the officers witnessed a white male approach [Appellant] and drop change between his legs. C.I. Seiler believed he had just witnessed a partial transaction. [Appellant] was seen a few minutes later counting small objects in his hands. The jury could have inferred that he was counting the coins he was just given by the white male." TCO at 5-6; *see also Stokes*, *supra* ("Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact."). Further, even if such evidence were improperly admitted due to its irrelevance, we would agree with the Commonwealth that any resulting prejudice would be minimal, and Appellant's admission to selling crack cocaine makes the prejudicial effect of this purported error so insignificant in comparison that the error could not have contributed to the verdict. *See Stokes*, *supra*.[9] Thus, we decline to grant Appellant relief on this ground.

_____

[9] To the extent we depart from — and/or supplement — the trial court's rationale, we observe that, "where the result is correct, an appellate court

## Issue 4

In Appellant's fourth and final issue, he claims that "[t]he sentencing court abused its discretion in sentencing [him] to 5-10 years[' imprisonment], well above the aggravated range of sentencing."  Appellant's Brief at 36 (emphasis omitted).  This claim implicates the discretionary aspects of his sentence.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right.  **Commonwealth v. Sierra**, 752 A.2d 910, 912 (Pa. Super. 2000).  An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
>> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).
>
> **Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006).  Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed.  **Commonwealth v. Mann**, 820 A.2d 788, 794 (Pa. Super. 2003), *appeal denied*, 574 Pa. 759, 831 A.2d 599 (2003).
>
> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis.  **Commonwealth v. Paul**, 925 A.2d 825, 828 (Pa. Super. 2007).  A substantial question exists "only when the appellant advances a colorable argument

---

may affirm a lower court's decision on any ground without regard to the ground relied upon by the lower court itself."  **Commonwealth v. Singletary**, 803 A.2d 769, 772-73 (Pa. Super. 2002) (citation omitted).

that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Sierra**, **supra** at 912–13.

**Commonwealth v. Griffin**, 65 A.3d 932, 935 (Pa. Super. 2013) (quoting

**Commonwealth v. Moury**, 992 A.2d 162, 170 (Pa. Super. 2010)).

Here, the record demonstrates that Appellant filed a timely notice of appeal, properly preserved this claim in his post-sentence motion, and included a Rule 2119(f) statement in his appellate brief in compliance with our Rules of Appellate Procedure. Therefore, we proceed to determine whether Appellant has raised a substantial question to meet the fourth requirement of the four-part test set forth above.

Appellant asserts in his Rule 2119(f) statement that the trial court "abused its discretion in sentencing well above the aggravated range of the sentencing guidelines and … the sentence is unreasonable." Appellant's Brief at 25. More specifically, he says that "the trial court did not take into full consideration the circumstances of the underlying case and the gravity of the offense. The court fashioned the sentence based primarily on … Appellant's prior criminal and supervision history…." **Id.** Based on the arguments presented in Appellant's Rule 2119(f) statement, and the case law on which he relies, we conclude that he has presented a substantial question for our review. **See Commonwealth v. Hanson**, 856 A.2d 1254, 1257 (Pa. Super. 2004) ("Under 42 Pa.C.S.[] § 9781(c)(3), a claim that 'the sentencing court sentenced outside the sentencing guidelines,' … presents such a substantial question.") (citation omitted); **see also** 42 Pa.C.S. § 9781(c)(3) ("The

- 15 -

appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds … the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.").

Accordingly, we will review the merits of his claim, mindful of the following standard of review:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Johnson-Daniels***, 167 A.3d 17, 28 (Pa. Super. 2017) (citation omitted).

When considering a challenge to a sentence that falls outside of the sentencing guidelines, our Supreme Court has explained:

> Through the Sentencing Code, the General Assembly has enacted a process by which defendants are to be sentenced. As a threshold matter, a sentencing court may select one or more options with regard to determining the appropriate sentence to be imposed upon a defendant. These options include probation, guilt without further penalty, partial confinement, and total confinement. 42 Pa.C.S. § 9721(a). In making this selection, the Sentencing Code offers general standards with respect to the imposition of sentence which require the sentencing court to impose a sentence that is "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). Thus, sentencing is individualized; yet, the statute is clear that the court must also "consider" the sentencing guidelines adopted by the Pennsylvania Commission on Sentencing. ***Id.*** If the court imposes a sentence outside of the sentencing guidelines, it must provide a written

statement setting forth the reasons for the deviation and the failure to do so is grounds for resentencing.

The Sentencing Code also sets forth express standards regarding appellate review of a defendant's sentence. As is apparent from the statutory provision setting forth the parameters of appellate review, the central focus of substantive appellate review with respect to a sentence outside of the guidelines is whether the sentence is "unreasonable":

> **(c) Determination on appeal.**—The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:
>
> ***
>
> (3) *the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.*
>
> In all other cases[,] the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S. § 9781(c) (emphasis supplied).

In making this "unreasonableness" inquiry, the General Assembly has set forth four factors that an appellate court is to consider:

> **(d) Review of record.**—In reviewing the record the appellate court shall have regard for:
>
> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
>
> (3) The findings upon which the sentence was based.
>
> (4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

Thus, under the Sentencing Code[,] an appellate court is to exercise its judgment in reviewing a sentence outside the sentencing guidelines to assess whether the sentencing court imposed a sentence that is "unreasonable." 42 Pa.C.S. § 9781(c), (d).

Yet, what makes a sentence "unreasonable" is not defined in the statute. Generally speaking, "unreasonable" commonly connotes a decision that is "irrational" or "not guided by sound judgment." The Random House Dictionary of the English Language, 2084 (2nd ed. 1987); *see* 1 Pa.C.S. § 1903 (words to be construed according to their common and approved usage). While a general understanding of unreasonableness is helpful, in this context, it is apparent that the General Assembly has intended the concept of unreasonableness to be a fluid one, as exemplified by the four factors set forth in Section 9781(d) to be considered in making this determination. Indeed, based upon the very factors set out in Section 9781(d), it is clear that the General Assembly intended the concept of unreasonableness to be inherently a circumstance-dependent concept that is flexible in understanding and lacking precise definition. *Cf. United States v. Crosby*, 397 F.3d 103, 115 (2[d] Cir. 2005) (explaining concept or reasonableness in context of sentencing matters).

Thus, given its nature, we decline to fashion any concrete rules as to the unreasonableness inquiry for a sentence that falls outside of applicable guidelines under Section 9781(c)(3). We are of the view, however, that the Legislature intended that considerations found in Section 9721 inform appellate review for unreasonableness. That is, while a sentence may be found to be unreasonable after review of Section 9781(d)'s four statutory factors, in addition a sentence may also be unreasonable if the appellate court finds that the sentence was imposed without express or implicit consideration by the sentencing court of the general standards applicable to sentencing found in Section 9721, *i.e.*, the protection of the public; the gravity of the offense in relation to the impact on the victim and the community; and the rehabilitative needs of the defendant. 42 Pa.C.S. § 9721(b). Moreover, even though the unreasonableness inquiry lacks precise boundaries, we are confident that rejection of a sentencing court's imposition of sentence on unreasonableness grounds would occur infrequently, whether the sentence is above or below the guideline ranges, especially when the unreasonableness inquiry is conducted using the proper standard of review.

*Commonwealth v. Walls*, 926 A.2d 957, 962-64 (Pa. 2007) (footnote omitted).

Here, Appellant complains that he "was sentenced to 5-10 years['
imprisonment] for [PWID], which is well outside the aggravated range of the
sentencing guidelines. The standard range for this offense is 21 to 27
months[,] plus or minus 6 months. This sentence, more than 2 years outside
the aggravated range, is excessive and unreasonable." Appellant's Brief at
36-37. More particularly, he claims that,

> [c]learly, the trial court fashioned this sentence based on …
> Appellant's prior record and supervision history. The trial court
> did not use Appellant's prior criminal conduct and history as
> merely an aggravating fact; the trial court used his prior history
> to disregard the guidelines completely and impose a minimum
> sentence which was almost double the top of the aggravated
> range of the sentencing guidelines. The trial court referred several
> times to … Appellant's prior record score as actually being a 10.
> In doing so, the trial court improperly emphasized Appellant's
> criminal/supervision history, all while barely discussing the
> circumstances of the crime for which the trial court was sentencing
> Appellant. At no time during sentencing did the trial court discuss
> the facts of the case, circumstances of the actual offense and why
> the well-above[-]aggravated[-]range sentence was appropriate
> for the charge.

> The circumstances of this case are typical and are arguably on the
> lower range of seriousness in the scheme of [PWID] cases. Based
> on the evidence presented by the Commonwealth, it was clear
> that Appellant was certainly not in charge of a big[-]scale drug
> operation and obviously had none of the items that would be
> possessed by someone running a big[-]scale drug operation. []
> Appellant had a small amount of crack cocaine in his possession;
> just over 2 [grams]. He also possessed a small amount of
> money…, and there was no evidence presented at trial that the
> money was the proceeds of drug sales. Further, he had none of
> the paraphernalia normally possessed by those that intend to
> deliver drugs; no cell phone, no ledger or tally sheet, no packaging
> material, and no way to measure or weigh substances. Not only
> do these factors show he was not any type of drug king-pin; all of
> these factors point to possession for personal use. There is
> nothing extraordinary or distinguishable about the circumstances

and facts of this case that warrant anything but a standard range sentence.

The trial court stated it considered the sentencing factors under [Section] 9721, however[, it] did not describe the impact on the community or any specifics regarding the underlying circumstances of the actual crime Appellant was convicted of committing. The trial court did mention that its sentence was based on the offense of [PWID], not delivery, presumably because the Commonwealth's argument for its sentencing recommendation was that Appellant was "again out there selling cocaine," when Appellant was not convicted of, or even charged with, Delivery of a Controlled Substance in this case.[10]

The majority of the remaining discussion on the record was a recitation of Appellant's criminal history and supervision history. The trial court has the responsibility to consider *all* aspects of the case and history of … Appellant. While the trial court certainly needed to review and consider … Appellant's criminal and supervision history in fashioning its sentence, it cannot primarily base the well[-]above[-]aggravated[-]range sentence on Appellant's prior criminal conduct. Doing so was an abuse of discretion and resulted in a completely unreasonable sentence.

*Id.* at 39-42 (internal citations omitted; emphasis in original).

The record belies Appellant's argument. At sentencing, the trial court

stated the following in rendering its sentence:

All right. I do … acknowledge [Appellant's] argument that the charge was [PWID], not a delivery. So my sentence is based on the charge of [PWID]. I would note, his prior record score from the [pre-sentence investigation (PSI) report] that was prepared, that according to this PSI, it does not appear as though he has ever successfully completed supervision of the robbery as discussed [that occurred] in Virginia. It was disposed of on February 11th, 1992, at which point[,] it looked like he received a probationary sentence, if I'm reading this correctly. It says zero years to 120 months. So I'm not sure if that was an incarcerated

_____

[10] We note that the Commonwealth recommended that the court sentence Appellant to 6-12 years' imprisonment. N.T. Sentencing, 12/10/19, at 2.

sentence or not, but that had a max date of the year 2002. So he was on supervision, and … it looks like for ten years.

Then, within that time, on February 23rd, 1993, he received a conviction for a simple assault, which appears -- again it does not document any jail time. It looks like he was under supervision from February -- I'm not really sure. It … has a conviction date of February 23rd, 1993, but the max date is February 23rd, 1993.

Then[,] [o]n August 28th, 1993, he receives a charge, theft by unlawful taking, in Virginia. There is a conviction date of June 6th, 1994. Again, zero months, and his max date is June 6th, 1994. I'm not sure if he received any supervision for that.

A month later[,] on … September 3rd of 1993, he receives a charge of theft by unlawful taking. There is [a] conviction date of June 6th. It looks like that was already resolved with the other offense out of Virginia.

Then, on May 24th, 1996, he was charged again with theft by unlawful taking. That was disposed of on June 20th of 1997, in which he … received 24 months to 120 months, which took him under supervision until the year 2007.

While on supervision, on July 24th of 2003, he received a charge in Virginia for a misdemeanor possession of a controlled substance, of which he received a sentence of 10 months to 12 months, under supervision until November 5th of 2004. He is still on supervision in an older case in Virginia. And [i]n February, 2005, he has another misdemeanor possession charge, which he received a sentence of [3] months to 12 months[,] with 11 days['] time served, taking him to supervision of April 1st, 2006 [*sic*].

Then[,] he is charged on November 25th, 2005, with a felony, manufactured, delivery, or [PWID], still being under supervision in Virginia. This charge was out of Berks County. It appears from the PSI that he received a sentence of 36 months['] special probation, taking him under supervision until May 25th of 2013.

He goes back to Virginia, and on August … 15th of 2011, he is charged with indecent exposure, of which he receives 12 months, taking him under supervision until September 12th of 2012. Three days later[,] in August[,] in Virginia[,] he is charged with indecent exposure, receiving a 12-days-to-12-month sentence.

Then[,] on July 29th of 2015, he's charged with a retail theft out of Bucks County. It looks like he does not successfully complete that because I have a note here that his probation is revoked. He winds up being under supervision on October 4th of the year 2020 [*sic*]. Three days later[,] he's charged… in Montgomery County with a retail theft. He receives four years, and he's under supervision until July 20th of 2021.

One month later[,] on September 25th of 2015, he's in Berks County, and he's charged with possession of marijuana, which takes him to June 16th of 2016. He's also charged under that same docket with drug paraphernalia in Berks County, and that count takes him under supervision until June 16th of 2017.

This offense date is June of 2019. He still would have been under supervision from the charge out of Montgomery County[,] and the charge out of Bucks County. As indicated, the guidelines only go to a prior record score of five. I believe the district attorney is right. The prior record, if they continued to count, would be a ten.

Under Pennsylvania Commission on Sentencing reasons for the guidelines include a danger to society [*sic*], which the [c]ourt finds that [PWID] is a dangerous crime. He has multiple current convictions. He has a repeat criminal pattern and is a habitual career criminal, a[l]though he was not characterized under the guidelines [*sic*]. He was on probation at [the] time of this arrest.

The [c]ourt finds he is not a candidate for rehabilitation as he's been involved with the criminal justice system since 1991. He has been under both county and state supervision. He has a long prior adult felony record[,] which is not reflected in the guidelines. As indicated, his prior record score is a five; however, he has accumulated ten points.

I also considered the sentencing factors under … Section 9721, the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community -- in this case it would be the community -- rehabilitative needs of [Appellant] -- which [Appellant], he has been provided with numerous opportunities -- factors in favor of probation, which I find none, and basis for total confinement, which the [c]ourt, at this point, I don't believe that [Appellant] has any interests … in doing anything other than committing crimes. And one of those things is reflected by the fact[,] on the PSI, within days of having an arrest, he has another arrest. And then[,] specifically going back to 2015, on July 29th, he is arrested in Bucks County[,] not

- 22 -

long after he is arrested in Montgomery. And July 25th, he is arrested in Berks County. So he's moved from county to county. We have arrests from Virginia. As you've indicated, that is where he grew up. We have arrests in Berks County that started in 2005. And now we are into 2019.

Based on all those factors, I do believe it is appropriate. I do not believe the guidelines are appropriate in this case.[11] As indicated, he actually has ten prior record score points and multiple convictions while under supervision. I … don't believe that he ever has successfully completed supervision. According to the PSI, there might have been a very brief time between year 2012 -- no, he would have been under supervision until 2013. There might have been a brief time between the year 2013 and the year 2015, according to the PSI.

All right. For all those reasons[,] the sentence is as follows….

N.T. Sentencing at 8-13.

We discern no abuse of discretion by the trial court. Our review of the sentencing transcript demonstrates that the trial court considered the applicable sentencing guidelines, and determined that an upward departure from the guidelines was appropriate, given that Appellant has been under both county and state supervision for years, but has continued committing crimes in multiple Pennsylvania counties as well as in Virginia. Though the trial court did discuss at length Appellant's prior criminal history set forth in his PSI report, it nevertheless specifically stated that it considered the Section 9721(b) sentencing factors, including the gravity of the offense as it relates to the impact on the life of the victim and on the community. Further, in response to the Commonwealth's suggestion that Appellant had been

---

[11] The Commonwealth provided the court with the applicable guidelines at sentencing. N.T. Sentencing at 2.

delivering drugs to a homeless man who was paying him in change, **see** N.T. at 2-3, the court acknowledged that it was sentencing Appellant on the charge of PWID, not a delivery. It also explicitly found PWID to be a dangerous crime affecting the community.

Moreover, after reviewing Section 9781(d)'s four statutory factors, we conclude that Appellant's sentence is not unreasonable. While Appellant continues to argue that the evidence indicates that the drugs were only for personal consumption, and that the circumstances of his case are on the 'lower range of seriousness,' the jury convicted him of PWID, and the evidence presented at trial included that Appellant had admitted to selling cocaine for extra money. In addition, Appellant has a long — and steady — history of trouble with the law and, thus far, has failed at rehabilitation. The court also had the benefit of a PSI report, and the opportunity to observe Appellant both at sentencing and during his jury trial. **See Walls**, 926 A.2d at 967 n.7 ("[W]here pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.") (citation omitted). In sentencing Appellant, the court noted that Appellant committed PWID, PWID poses a danger to society, and Appellant has a repetitive criminal pattern despite years of supervision. Finally, the court determined that the guidelines were not appropriate in this case, as Appellant has an extensive record and multiple convictions while under supervision. Therefore, because the trial court considered Section

9721(b)'s sentencing factors in sentencing Appellant, and Appellant's sentence is reasonable upon our review of the record and Section 9781(d)'s factors, we conclude that the trial court did not abuse its discretion in sentencing Appellant.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/30/2020