J-S34017-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANKLIN JAMES WARFEL | : | |
| | : | |
| Appellant | : | No. 407 MDA 2021 |

Appeal from the Judgment of Sentence Entered February 24, 2021
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0004510-2019

BEFORE:  DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED: FEBRUARY 17, 2022**

Franklin James Warfel appeals from his judgment of sentence imposed following a jury trial resulting in convictions for aggravated indecent assault of a child, aggravated indecent assault (complainant less than 13 years old), indecent assault (complainant less than 13 years old), and corruption of minors.[1] Warfel challenges the admission of evidence regarding text and Facebook messages referring to his possible criminal punishment if convicted. We affirm.

The trial court aptly set forth the following underlying facts:

A.R. testified that she came to court because [Warfel] had touched her when she and her mother, [C.R.] were living at [Warfel's] house. A.R. was familiar with [Warfel] because he was her mother's ex-fiancé. A.R. stated that the touching occurred around the time [Warfel] bought a new mattress for himself and her

---

[1] 18 Pa.C.S.A. §§ 3125(b), 3125(a)(7), 3126(a)(7), and 6301(a)(1)(i), respectively.

mother. On the day of the touching, A.R. and her mother were napping on the new mattress. A.R. awoke from her nap to find [Warfel] touching her from behind. A.R. testified that [Warfel] used his hands to touch her breasts, butt and vagina. A.R. said that the touching finally stopped when she moved closer to her mother, who was asleep in the bed at the time, which caused [Warfel] to leave the bedroom. A.R. further testified that she never gave [Warfel] permission to touch her in the ways that he did. A.R. identified [Warfel] in court.

[C.R.] testified that she was called to court because of an incident involving her daughter, A.R. and [Warfel] that occurred in February 2019. [C.R.] said that she knew [Warfel] because he was an ex-boyfriend with whom she and A.R. had lived with [] beginning in 2014. [C.R.] testified that A.R. had come to her and told her that [Warfel] had touched her private parts. [C.R.] then proceeded to confront [Warfel] who denied the allegation saying "she must have dreamed it because it didn't happen."

[C.R.] then proceeded to talk to A.R. again about the allegations she had made about [Warfel] touching her. [C.R.] said that A.R. repeated the allegation in more detail about when and how [Warfel] had touched her. Due to the late time of day, [C.R.] then went to bed and then confronted [Warfel] again the next day. This time, [C.R.] recalled that [Warfel] admitted to the allegations saying, "[Y]es and that he need[ed] help and [that] he has a problem." [C.R.] then said that [Warfel] asked for her to keep the touching a secret and not to tell anyone. This prompted [C.R.] and A.R. to move out of [Warfel's] residence immediately. [C.R.] testified that her ex-husband contacted the police to report the incident. [C.R.] then testified about her communications with [Warfel] via text message and Facebook message after she left his residence. [C.R.] also identified [Warfel] at trial.

[Warfel] also testified at trial. [Warfel] testified that he owned the home where the alleged incident occurred for 11 years. [Warfel] said that at the time the incident occurred there were approximately seven people residing in his home. [Warfel] testified that he and [C.R.] had been dating on and off between 2014 and 2019. [Warfel] testified denying the allegations made by A.R. about him touching her private parts.

[Warfel] testified as to his recollection of events giving rise to the allegation of inappropriate touching. [Warfel] recalls that on the day of the incident that A.R., [C.R.] and himself were all

on the mattress and fell asleep together after talking. He described his position as cuddling A.R. from behind but denied any inappropriate touching, but mentioned his hand was around her waist. [Warfel] then testified that he was confronted by [C.R.] about allegations made by A.R. [Warfel] then testified about his recall regarding his communications with [C.R.] via text and Facebook messages. [Warfel] characterizes his relationship with A.R. as rocky because she treated him like a child, but that he wouldn't ever touch her like she said.

Tr. Ct. 1925(a) Op. 5/11/21 at 1-4 (citations omitted).

At trial, before the admission of the messages between Warfel and C.R., the court heard from counsel, out of the presence of the jury, about issues regarding the messages' admissibility. After hearing about an objection not at issue in this appeal, the court said it believed there was an additional issue. The prosecutor volunteered that there was a question about "[t]he statement that [Warfel] is going to go to prison" and gave her recollection of Warfel's messages about his likelihood of receiving a prison sentence. N.T., 11/9/20-11/12/20 at 86.

Warfel's counsel responded, "And then [C.R.] turns and says, well, it's your first offense, you'll probably get probation and things to that effect. I believe that would be improper." *Id.* at 87. Defense counsel added, "Especially talking about time of incarceration, the jurors are not allowed to do that[.]" *Id.* The Commonwealth countered that "it still goes to his own confession" and suggested that the court give a limiting instruction that the jury was not

to consider the sentence Warfel might receive. *Id.* The court overruled the objection, stating that "it's relevant with the limiting instruction."[2] *Id.*

C.R. then testified and read the messages at issue into the record:

[C.R.]: . . . [Warfel wrote], please, please tell me that you were messing with me about John knowing. I replied, yes, he called both [police] departments directly. [Warfel wrote] are the cops really involved already. I replied, kill yourself. I don't know if you can't handle the blow up from all of this. Especially when everyone finds out what you did. [Warfel wrote], what do you think I should do. I replied, I know I couldn't live with myself over something like that. Way too extreme.

[Commonwealth]: Let's go on to the next page.

[C.R.]: I replied, of course, either me or your parents will. If they don't want him, I will take him in. He's an innocent victim in all of this. [Warfel wrote] will you take care of Titan [the dog]. I replied, they would have to take him until I get my own place. If you go to jail I will take him. And then I said, hello. [Warfel wrote], I'm here. I replied, it's a first time offense so you might not go to jail. And [Warfel wrote], I'm just too depressed. I'm going to have to talk to an attorney and see what they can negotiate.

[Commonwealth]: Let's go down to the next page, if you can pick up at the top.

[C.R.]: [Warfel wrote], all I can do is hope and pray that they can some how [sic] punish me without tearing the dogs' lives and [Warfel's son's] life apart. I'd do anything just to make sure that they are still okay. [Warfel wrote], highly doubt it though. Jail seems likely. I replied, from what I read you'll probably get probation in a plea bargain as a first time offense and what you

_____

[2] This exchange between the court, Warfel's counsel, and the Commonwealth was sufficient to preserve for appellate review Warfel's instant claim. *See* Pa.R.Crim.P. 603(a) ("Any ruling of the judge on an objection or motion made during the trial of any action or proceeding shall have the effect of a sealed exception in favor of the party adversely affected without the necessity of a formal request or notation made on the record"). Hence, we conclude that the Commonwealth's contention that Warfel's issue should be deemed waived for failure to object in the trial court to be unavailing.

did isn't considered severe enough requiring jail times. And I reply, yes, but if you take responsibility for your actions and agree to get help and if I as a mother support that, it's possible. And [Warfel wrote], that's if I'm extremely lucky. And [Warfel wrote], I do want counseling, affordable counseling.

* * *

[Commonwealth]: You can pick up then with the next message.

[C.R.]: I replied, how did it go with the lawyer. [Warfel wrote], not good. It's not looking good. I replied, like what. Jail time. How much time. Did he give you an idea. [Warfel wrote], yes. [Warfel wrote], don't know. [Warfel wrote], all depends on how far [A.R.] and her dad want to push this. [Warfel wrote], it's gonna be hard to plea this down if they push the worst on me. [Warfel wrote], I'm so sorry. Sad emoji.

N.T. at 185-187; 188.

Regarding the reference to jail time, the trial court gave the following cautionary instruction: "[A]nything you heard with respect to punishment, I want you to disregard. As I've instructed you previously, you are the finder of fact. Punishment is something that will be dealt with depending on whether or not [Warfel] is convicted and that will not be your role, okay." N.T. at 198.

Ultimately, the jury found Warfel guilty of the above-referenced charges. The court sentenced Warfel on February 24, 2021, to the mandatory minimum sentence of 10 to 20 years' incarceration, followed by 3 years of probation. The instant timely appeal followed. Both the trial court and Warfel complied with Pa.R.A.P. 1925.

Warfel raises a single issue:

Did the trial court abuse its discretion in allowing evidence that [Warfel] would "probably get probation" and "might not go to jail" for the charged offenses where this evidence concerned

punishment and minimized the significance of this case in the eyes of the jury despite the fact that Warfel faced a mandatory-minimum sentence of 10 to 20 years' incarceration if convicted?

Warfel's Br. at 4.

Warfel argues that the trial court erred by admitting C.R.'s text messages opining that Warfel would likely only receive probation with no jail time. He argues the evidence was inadmissible pursuant to **Commonwealth v. Lucier**, 225 A.2d 890, 891 (Pa. 1967) and that it was "more broadly" irrelevant. Warfel's Br. at 23. Warfel asserts that the jury was likely improperly influenced to convict Warfel by the suggestion that he would receive little to no criminal punishment. Warfel emphasizes that the implication that he would receive little or no jail time was erroneous and prejudicial because he faced a mandatory minimum sentence of 10 to 20 years.

"A trial court has broad discretion to determine whether evidence is admissible and a trial court's ruling on an evidentiary issue will be reversed only if the court abused its discretion." **Commonwealth v. Huggins**, 68 A.3d 962, 966 (Pa.Super. 2013) (*citing* **Commonwealth v. Cook**, 676 A.2d 639, 647 (Pa. 1996)). We do not disturb a ruling admitting evidence "unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill will, or such lack of support to be clearly erroneous." **Id.** (*quoting* **Commonwealth v. Minich**, 4 A.3d 1063, 1068 (Pa.Super. 2010)). As our scope of review of evidentiary questions is plenary, we review the ruling within the context of the entire record. **Id.**

"The threshold inquiry with the admission of evidence is whether the evidence is relevant." **Commonwealth v. Stokes**, 78 A.3d 644, 654 (Pa.Super. 2013) (citation omitted). "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." **Id.** (citation omitted). In assessing whether to admit evidence that is logically relevant, the court must also "weigh the relevance and probative value of such evidence against the prejudicial impact of that evidence." **Commonwealth v. Jones**, 683 A.2d 1181, 1193 (Pa. 1996); **see also** Pa.R.E. 403.

It is well settled that "punishment is a matter solely for the court and not for the jury to know or [to] consider during its deliberations." **Commonwealth v. White**, 504 A.2d 930 (Pa.Super. 1986) (citing **Lucier**, 225 A.2d at 891 (holding that a mistrial was warranted, in part, because the judge submitted the possible sentencing penalties to the jury during deliberations)). "[T]he jury has nothing to do with the punishment of an offense[.]" **White**, 504 A.2d at 930 (citation omitted) (holding defendant not entitled to jury instruction regarding mandatory minimum sentence he would face upon conviction).

We do not think the trial court exceeded the bounds of its discretion in overruling the objection and admitting the evidence. Warfel's citation to **Lucier** is inapposite. There, it was the trial judge who made the reference to criminal punishment, and the judge did so to establish the actual sentence the

defendant would face if convicted. ***See Lucier***, 225 A.2d at 891. Here, the judge did nothing of the sort.

The messages at issue were relevant and admissible as part of the telling of a larger story in which Warfel himself said that he could face prison time. They thus were relevant to show that Warfel's statements reflected his consciousness of guilt. For example, when C.R. said that it was Warfel's first offense and what he did was not severe enough to warrant prison time, Warfel did not dispute that he had committed an offense or had "done" something. He instead agreed he might not get a prison sentence if he is "lucky" and said he wanted counseling. When C.R. asked if Warfel's lawyer thought he would get "jail time" and how much, Warfel responded, "yes," the amount depended on how hard they "pushed," and, "I'm sorry. Sad emoji."

Admitting the testimony also did not violate Rule 403. C.R. was not offered as an authority on sentencing, and the court issued a cautionary instruction telling the jury to disregard any testimony concerning Warfel's potential sentence because sentencing was not within the jury's purview.[3] ***See Huggins***, 68 A.3d at 966; ***Stokes***, 78 A.3d at 654; ***Jones***, 683 A.2d at 1193. Even if admission of the messages were error, we would find the error

---

[3] Warfel's reference to cases involving improper references to the death penalty in capital cases is also inapposite. Warfel cites ***Caldwell v. Mississippi***, 472 U.S. 320, 328-29 (1985), and ***Commonwealth v. Montalvo***, 205 A.3d 274, 294 (Pa. 2019), for the proposition that a jury is improperly influenced by the implication that responsibility for a capital sentence ultimately lies with the judge, not the jury. Here, no such prejudice occurred, as the jury was properly instructed that Warfel's sentencing was for the trial court alone.

harmless. ***See Commonwealth v. Hamlett***, 234 A.3d 486, 492-93 (Pa. 2020). Although C.R. expressed in the messages her belief at the time that Warfel was unlikely to receive prison time, both Warfel and, perhaps most significantly, his lawyer disagreed. We thus conclude beyond a reasonable doubt that any error in admitting the evidence could not have contributed to the verdict. ***See Commonwealth v. Mitchell***, 839 A.2d 202, 214 (Pa. 2003). We therefore affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/17/2022